DiFIORE, Chief Judge:
The two questions on this appeal are whether plaintiff City of New York is an *458 intended third-party beneficiary of the architectural services contract between plaintiff Dormitory Authority of the State of New York (DASNY) and defendant Perkins Eastman Architects, P.C. and whether DASNY's negligence claim against Perkins is duplicative of its breach of contract claim. We hold that summary judgment should have been granted in defendant Perkins' favor on both issues.
This action arose out of a construction project to build a forensic biology laboratory at 26 th Street and First Avenue in Manhattan, adjacent to Bellevue Hospital, for use by the Office of the Chief Medical Examiner (OCME). The City (on behalf of OCME) and DASNY entered into a project management agreement, which provided that DASNY would finance and manage the design and construction of the laboratory (the project). DASNY was authorized to enter into contracts with the necessary contractors and consultants including, as relevant here, the architect, Perkins.
Pursuant to the contract between DASNY and Perkins (the Perkins contract), Perkins was to provide design, architectural, and engineering services for the project and supervise its construction. Perkins was also responsible for providing a site plan for the location of the laboratory in relation to the hospital. The contract further provides that Perkins would "indemnify and hold harmless" DASNY and the "Client" (that ***708 is, OCME, and the NYC Police and Fire Departments) from any claims arising out of Perkins' negligent acts or omissions and that extra costs or expenses incurred by DASNY and the Client as a result of Perkins' "design errors or omissions shall be recoverable from [Perkins] and/or its Professional Liability Insurance carrier."
Pursuant to a separate contract, DASNY retained Samson Construction Co., which is not a party to this appeal, as the contractor to provide excavation and foundation work for the Project. Significantly, the contract executed between DASNY and Samson provides that the client-i.e., the City-"is an intended third party beneficiary of the Contract for the purposes of recovering any damages caused by [Samson]." Although there are passing references to the client in the Perkins contract, no analogous language providing that the City is an intended third-party beneficiary appears there.
Work began on the foundation in May 2002, but the failure to properly install an excavation support system led to substantial damage and delays. In particular, this failure caused the adjacent C & D building on the Bellevue campus to "settle" by as much as eight inches, damaged other adjacent structures (including sidewalks, sewers and water mains), and required emergency repairs. These issues caused the project to be delayed by more than 18 months at an additional cost of $37 million.
Plaintiffs commenced this action against Samson in August 2006. Perkins was added as a defendant in February 2007 through the filing of a supplemental summons and complaint, which contained two causes of action against Perkins-one alleging breach of contract and the other alleging negligence. The breach of contract claim alleges that Perkins breached the contract by:
"failing to provide adequate designs for the Project, by failing to properly supervise the subcontractors and subconsultants that it retained with regard to the Project, by failing to monitor the progress of the Work to ensure that it was being completed properly and in substantial compliance with the design recommendations, specifications and their intent, by failing to ascertain the actual field conditions, including the subsurface *459 conditions at the Site and the foundations beneath [the C &]D Building ***709 and by failing to advise DASNY of the risks to the [C &]D Building posed by the installation of the [excavation support system] and taking precautions against such risks."
The allegations set forth in the negligence cause of action are virtually identical in every respect, but with an introductory phrase that references Perkins' failure "to comply with professional standards of care" instead of breach of contract. The damages for both claims are described as the "significant additional expenses" necessary to complete the project. Although the complaint's ad damnum clause states a figure for Perkins' negligence that is $4 million higher than for its breach of contract, there is no basis given for the additional amount. During early discovery, plaintiffs produced a binder and provided testimony showing that the total cost of fixing the damage was approximately $37 million, including repairs to the project site and the adjacent structures, with no distinction drawn between the two claims.
Perkins moved for summary judgment to dismiss the City's breach of contract and negligence claims and to dismiss DASNY's negligence claim as duplicative of its breach of contract claim. Supreme Court granted the motion in part, dismissing the City's breach of contract and negligence claims (2013 NY Slip Op 34183[U] [2013] ). The court held that the City was not an intended third-party beneficiary of the Perkins contract and that the City's claim for simple negligence was therefore time-barred. The court allowed both of DASNY's claims to proceed, finding that its negligence claim was not duplicative of its contract claim.
The Appellate Division modified by denying Perkins' motion for summary judgment on the City's breach of contract claim and, as so modified, affirmed ( 137 A.D.3d 433, 27 N.Y.S.3d 114 [1st Dept. 2016] ). The Court held that the City had raised an issue of fact whether it was an intended third-party beneficiary of the parties' contract. The Court also denied Perkins' motion for summary judgment to dismiss DASNY's negligence claim as duplicative of its breach of contract claim. The Court held there was an issue of fact whether Perkins assumed a duty of care to perform in accordance with professional standards that was independent of its contractual obligations.
One Justice dissented in part, and would have dismissed DASNY's negligence claim as duplicative. The Appellate Division granted Perkins' motion for leave to appeal to this Court, ***710 certifying the following question: "Was the order of this Court, which modified the order of the Supreme Court, properly made?" We answer the certified question in the negative.
Intended Third-Party Beneficiary
"[A] third party may sue as a beneficiary on a contract made for [its] benefit. However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts" ( Port Chester Elec. Constr. Corp. v. Atlas, 40 N.Y.2d 652, 655, 389 N.Y.S.2d 327, 357 N.E.2d 983 [1976] [citations omitted] ). We have previously sanctioned a third party's right to enforce a contract in two situations: when the third party is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was "an intent to permit enforcement by the third party" ( Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 485 N.E.2d 208 [1985] ).
*460 With respect to construction contracts, we have generally required express contractual language stating that the contracting parties intended to benefit a third party by permitting that third party "to enforce [a promisee's] contract with another" ( Port Chester, 40 N.Y.2d at 656, 389 N.Y.S.2d 327, 357 N.E.2d 983 ). In the absence of express language, "[s]uch third parties are generally considered mere incidental beneficiaries" ( 40 N.Y.2d at 656, 389 N.Y.S.2d 327, 357 N.E.2d 983 ). This rule reflects the particular nature of construction contracts and the fact that-as is the case here-there are often several contracts between various entities, with performance ultimately benefitting all of the entities involved.
Here, the parties were aware that the laboratory was being built for OCME's use. However, neither ground set out in Fourth Ocean exists for finding the City an intended third-party beneficiary (see 66 N.Y.2d at 45, 495 N.Y.S.2d 1, 485 N.E.2d 208 ). As to the first ground, the City is not the only entity that can recover under the Perkins contract; indeed, DASNY-the contracting party-has brought its own breach of contract claim. As to the second ground, the Perkins contract does not expressly name the City as an intended third-party beneficiary nor authorize the City to enforce any obligations thereunder; in contrast, the contract between DASNY and Samson expressly reserves third-party enforcement rights to the City. Notably, the Restatement uses a fact pattern that is nearly identical to this one to provide an illustration of an incidental (as opposed to intentional) third-party beneficiary-recognizing the fact that, although the performance ***711 of a construction-related contract may benefit a third-party end-user, that does not in itself establish enforcement rights in that third party (see Restatement [Second] of Contracts § 302, Comment e, Illustration 19). The City fails to raise an issue of fact concerning its status as a third-party beneficiary and Perkins' motion for summary judgment on this issue should have been granted.
Duplicative Negligence Claim
"It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated" ( Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 [1987] ). Put another way, where the damages alleged "were clearly within the contemplation of the written agreement ... [m]erely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim (70 N.Y.2d at 390, 521 N.Y.S.2d 653, 516 N.E.2d 190).
We have also recognized that "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship" and that several types of defendants-including professionals-can be held liable in tort "for failure to exercise reasonable care, irrespective of their contractual duties" ( Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 551, 583 N.Y.S.2d 957, 593 N.E.2d 1365 [1992] ). In certain circumstances, this independent duty has been imposed based on the nature of the services performed and the defendant's relationship with its customer-specifically, where the defendant "perform[s] a service affected with a significant public interest [and where the] failure to perform the service carefully and competently can have catastrophic consequences" ( 79 N.Y.2d at 553, 583 N.Y.S.2d 957, 593 N.E.2d 1365 ). To determine whether a tort claim lies, we have also evaluated the nature of the injury, *461 how the injury occurred and the harm it caused (see 79 N.Y.2d at 552, 583 N.Y.S.2d 957, 593 N.E.2d 1365 ). However, we have made clear that "where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory" ( 79 N.Y.2d at 552, 583 N.Y.S.2d 957, 593 N.E.2d 1365 ).
Here, the negligence allegations in the complaint are, as we held in Clark-Fitzpatrick, "merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract" ( 70 N.Y.2d at 390, 521 N.Y.S.2d 653, 516 N.E.2d 190 ). Indeed, as noted above, in this case, the factual allegations set forth in each cause of action are identical, except ***712 that the negligence claim is framed in terms of Perkins' failure to comply with professional standards of care. Moreover, despite the fact that the complaint seeks an additional unspecified $4 million in damages under the negligence cause of action, it fails to include a single allegation that contains any distinction between the damages applicable to either claim. The only damages alleged under either theory of recovery are the additional expenses required to complete the project, including the costs to repair the damage to adjacent structures. Significantly, in the contract itself, the parties contemplated Perkins' responsibility for additional costs or expenses incurred by DASNY or the client (in effect, the City) as a result of the architect's design errors or omissions, and addressed it in the contract terms. Likewise, during discovery, the total amount of damages was detailed by DASNY, with no distinction between the "additional expenses" incurred based on one claim or the other.
The cases relied upon by the dissent- Santulli v. Englert, Reilly & McHugh, 78 N.Y.2d 700, 579 N.Y.S.2d 324, 586 N.E.2d 1014 (1992), Sears, Roebuck & Co. v. Enco Assoc., 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977) and Robins v. Finestone, 308 N.Y. 543, 127 N.E.2d 330 (1955) -are inapposite. Each of those cases was focused on what statute of limitations applied to a given claim. In none of them did the defendant argue, as Perkins does here, that the tort claim should be dismissed on summary judgment because it was wholly duplicative of the contract claim in both its allegations and the specific damages sought.
There is nothing in Sears to suggest that a completely duplicative professional malpractice claim (identical in nearly every respect to the owner's contract claim) should be permitted to proceed against an architect simply because the defendant is an architect. Brushton-Moira Cent. School Dist. v. Thomas Assoc., 91 N.Y.2d 256, 669 N.Y.S.2d 520, 692 N.E.2d 551 (1998) makes that clear. In Brushton-Moira, we reiterated the holding in Sears that "when the rights and obligations of an owner and architect arise out of their contractual relationship, the owner may sue in contract or tort and the scope of evidence admissible on the issue of liability under either theory is the same" ( 91 N.Y.2d at 260-261, 669 N.Y.S.2d 520, 692 N.E.2d 551 [emphasis added] ). Indeed, in Brushton-Moira, the Supreme Court held, and the Appellate Division affirmed, that the "plaintiff failed to state a malpractice cause of action [against the architect] because plaintiff sought only economic damages which are recoverable under the breach of contract cause of action" ( 91 N.Y.2d at 260, 669 N.Y.S.2d 520, 692 N.E.2d 551 ).
***713 Clearly, there are circumstances where a professional architect may be subject to a tort claim for failure to exercise due care in the performance of contractual obligations. In seeking to "disentangl[e]
*462 tort and contract claims," we focused in Sommer both on potential catastrophic consequences of a failure to exercise due care and on the nature of the injury, the manner in which it occurred, and the resulting harm ( 79 N.Y.2d at 552, 583 N.Y.S.2d 957, 593 N.E.2d 1365 ). We distinguished between the situation where the harm was an "abrupt, cataclysmic occurrence" not contemplated by the contracting parties and one where the plaintiff was essentially seeking enforcement of contract rights ( 79 N.Y.2d at 552, 583 N.Y.S.2d 957, 593 N.E.2d 1365 ). Here, the C & D building settled during the course of several months, damaging adjacent structures. However, even if any "abrupt" or "catastrophic" consequences either could have or did result from Perkins' alleged negligence, the fact remains that the only damages alleged appear to have been within the contemplation of the parties under the contract-and, indeed, as set forth above, are identical for both claims. Put another way, there was no injury alleged here that a separate negligence claim would include that is not already encompassed in DASNY's contract claim. In these circumstances, DASNY "is essentially seeking enforcement of the bargain, [and] the action should proceed under a contract theory" ( Sommer, 79 N.Y.2d at 552, 583 N.Y.S.2d 957, 593 N.E.2d 1365 ). Thus, we hold that the negligence claim is duplicative of the breach of contract cause of action and Perkins' motion for summary judgment to dismiss that cause of action should have been granted.
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant Perkins' motion insofar as it sought summary judgment dismissing the fifth cause of action for breach of contract and dismissing the sixth cause of action for negligence should be granted, and the certified question should be answered in the negative.
WILSON, J. (dissenting in part):
I agree with the majority that the City of New York may not sue Perkins Eastman Architects, P.C. for breach of the Dormitory Authority of the State of New York (DASNY)-Perkins contract on the theory that the City is an intended third-party beneficiary of that contract, to which it is not a party.[1] However, I disagree with the determination that DASNY cannot maintain its sixth cause ***714 of action. The claim is one for professional malpractice, not ordinary negligence. We have held that professionals have an independent duty to perform within professional standards of care, regardless of any contractual duties, and that injured plaintiffs may maintain both professional malpractice and breach of contract claims against them. Of course, DASNY cannot double-recover for its losses, but it is entitled to pursue both its claims for breach of contract and professional negligence.
New York recognizes a distinct claim for professional malpractice and allows parties to pursue simultaneously a professional malpractice claim and a breach of contract claim (see *463 Santulli v. Englert, Reilly & McHugh, 78 N.Y.2d 700, 579 N.Y.S.2d 324, 586 N.E.2d 1014 [1992] ; Sears, Roebuck v. Enco Assoc., 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 [1977] ; see also Robins v. Finestone, 308 N.Y. 543, 127 N.E.2d 330 [1955] ). That is because, as the majority recognizes, a tort claim may be maintained in addition to a contract claim where there is a "breach of a legal duty independent of the contract" (see Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 551, 583 N.Y.S.2d 957, 593 N.E.2d 1365 [1992] ). Such an independent legal duty "may be imposed by law as an incident to the parties' relationship. Professionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties" ( id. ). Under the clear language of Sommer, architects, by their status as professionals, have the requisite independent legal duty. Of course, a contract might incorporate that duty and the professional standards of care, and might or might not include other requirements. Whether the contract includes terms beyond the duty of care owed by a professional in the field, a plaintiff can elect to bring a claim for professional malpractice, breach of contract, or both.
In Santulli, we reversed the Appellate Division's grant of summary judgment on plaintiff's breach-of-contract claim, allowing him to proceed at trial on both a legal malpractice and a breach-of-contract claim arising from the same alleged misfeasance, rejecting defendant's argument that a breach-of- ***715 contract action may lie against a professional only where "there is either a specific promise by the attorney to perform and there is a complete failure of any performance or where the attorney has undertaken a specific task and has failed to perform that task" ( 78 N.Y.2d at 706, 579 N.Y.S.2d 324, 586 N.E.2d 1014 ). In Sears, Roebuck, although the case came to us on a motion to dismiss, not a motion for summary judgment, we held that "inasmuch as the relationship between Sears, Roebuck as property owner and Enco Associates as architects had its genesis in the contract between them ... the owner may recover contract damages against the architects either on the theory of breach of a particular contract provision or on the theory of failure to exercise due care in the performance of the contract services" ( 43 N.Y.2d at 392-393, 401 N.Y.S.2d 767, 372 N.E.2d 555 ).
Contrary to the majority's contention, Brushton-Moira Cent. School Dist. v. Thomas Assoc., 91 N.Y.2d 256, 669 N.Y.S.2d 520, 692 N.E.2d 551 (1998) has nothing to do with a plaintiff's ability to bring both claims simultaneously. The sole issue in that case was whether damages should be measured at the time of breach or the time of trial. Moreover, the majority mischaracterizes the Appellate Division's decision in that case. The Appellate Division did not hold-or even suggest-that a party may not simultaneously pursue both a malpractice claim and a contract claim through the conclusion of trial. Instead, the plaintiff in Brushton-Moira had pursued both such claims through trial. Supreme Court denied recovery to the plaintiff on both theories. The Appellate Division reversed and awarded judgment to the plaintiff on its contract claim, and held that, because the proof and damages on the malpractice claim were identical, the plaintiff was not aggrieved by Supreme Court's dismissal of the malpractice claim, because recovery on the contract claim fully compensated the plaintiff ( 195 A.D.2d 801, 801-802, 600 N.Y.S.2d 511 [3d Dept. 1993] ; see Parochial Bus Sys., Inc. v. Bd. of Educ. of City of New York, 60 N.Y.2d 539, 544, 470 N.Y.S.2d 564, 458 N.E.2d 1241 [1983] ["Generally, the party who has successfully obtained a judgment or order in his favor *464 is not aggrieved by it, and, consequently, has no need and, in fact, no right to appeal"] ). Thus, Brushton-Moira supports DASNY's ability to pursue both theories through the completion of trial, and certainly contains no implication that a pretrial dismissal on the ground of duplication is appropriate. Today's decision cannot be squared with our prior precedents.
The majority also misapplies Sommer by confusing the test that applies when a plaintiff seeks to maintain a claim for ***716 ordinary negligence-not professional negligence-alongside a claim for breach of contract. Because no professional, and hence no special standard of care, is involved, we have refused to let a plaintiff proceed simultaneously with both when the gravamen is essentially for breach of contract, relegating the plaintiff to its contract claim alone, unless the alleged breach affects a significant public interest and failure to perform the service carefully could have catastrophic consequences (see Sommer at 552-553, 583 N.Y.S.2d 957, 593 N.E.2d 1365 ). The "public interest" and "catastrophic consequences" analyses apply only to ordinary negligence claims that duplicate contract claims, not to professional malpractice claims.[2] In professional malpractice cases, the independent legal duty is established by law; there is no need to search further for one, and it exists independent of any contract. So long as that duty is asserted by the plaintiff, he or she can maintain both contract and professional malpractice causes of action. Here, DASNY asserts that Perkins failed to comply with professional standards of care. Because of its status as an architect, Perkins has an independent legal duty to comply with those professional standards, contract or no, and without any application of the public interest/catastrophic consequences test. DASNY's alleged damages on each claim are the same $37 million. It cannot recover $74 million even if successful on both the contract and malpractice claims, but under our prior caselaw, it is free to pursue both theories to judgment. Accordingly, I dissent from the dismissal of DASNY's malpractice claim against Perkins.

Here, the City and DASNY are highly sophisticated parties. As described in its brief, DASNY's raison d'etre is "to help finance and construct public projects for New York's higher education, health care, and public institutions." In the contract between DASNY and the general contractor, Samson, DASNY and the City specifically provided that the City could sue for breach, but in the DASNY contract with Perkins, DASNY and the City omitted any such right. Those facts weigh very heavily here; I do not take our decision to suggest that, absent the sophistication of the parties or the clear difference in the City's right to sue under contracts concerning a single project, dismissal would nevertheless have been proper.

Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987), does not support the majority's position. In that case, we held that the plaintiff could not maintain its negligence claims against the Long Island Railroad Company because "plaintiff has not alleged the violation of a legal duty independent of the contract" (id. at 390, 521 N.Y.S.2d 653, 516 N.E.2d 190 ). The defendant in Clark-Fitzpatrick was not a professional, and therefore only a claim of ordinary negligence, not professional malpractice, was at issue.