Thus, the Court finds that Plaintiffs have sufficiently alleged the existence of a contract as of December 12, 2014 between the parties regarding the provision of credit card processing services.
B. Plaintiffs' Performance of Their Contract Obligations and Defendants' Breach
Plaintiffs further allege that they performed their obligations under the Implied Agreement (SAC, ¶¶ 107, 116), but that Defendants breached the Implied Agreement in three ways: (1) by authorizing *163 the fraudulent Ali transactions and failing to alert Plaintiffs to their fraudulent nature; (2) by failing to provide Plaintiffs with training to detect fraudulent activity; and (3) by breaching the implied covenant of good faith and fair dealing through the termination of Rockaway's account and placement of Plaintiffs on the MATCH list. (SAC, ¶¶ 102-120, 144-152.) Whether Defendants' actions actually constitute a breach of contract must be determined by reference to the parties' conduct throughout the course of their contractual relationship. Beth Israel Med. Ctr. , 448 F.3d at 582 (stating that the parties' course of conduct defines the terms of an implied-in-fact contract). At the pleadings stage, however, these allegations are sufficient to establish the third element of a breach of contract claim.
C. Injury
Finally, Plaintiffs claim that, as a result of Defendants' alleged breaches of the Implied Agreement, they have suffered injury by (1) becoming victims of the fraudulent Ali transactions and (2) being placed on the MATCH list, which has rendered cost-effective credit card processing services inaccessible to Plaintiffs. (SAC, ¶¶ 108, 117-119.)
* * *
In sum, the Court finds that the allegations in the SAC suffice to state Plaintiffs' claims for a breach of contract as to the Implied Agreement. Counts 1, 2, 6, and 11 will proceed to discovery.
II. Plaintiffs' Claim for Unjust Enrichment
In Count 7, Plaintiffs allege that Defendants were unjustly enriched by obtaining fees from Plaintiff Rockaway for the performance of credit card processing services without good faith and in an unreasonable manner. (SAC, Dkt. 29, ¶¶ 153-159.)
Unjust enrichment is, in essence, a quasi-contract claim for relief where "one party has received money or a benefit at the expense of another." City of Syracuse v. R.A.C. Holding, Inc. , 258 A.D.2d 905, 685 N.Y.S.2d 381, 381 (4th Dep't 1999). New York law allows recovery in such circumstances "[based] upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." State v. Barclays Bank of N.Y., N.A. , 76 N.Y.2d 533, 561 N.Y.S.2d 697, 563 N.E.2d 11, 15 (1990). This principle, however, will only apply "in the absence of any agreement." Goldman v. Metro. Life Ins. Co. , 5 N.Y.3d 561, 807 N.Y.S.2d 583, 841 N.E.2d 742, 746 (2005). Thus, a plaintiff may not simultaneously sue for a breach of contract and allege unjust enrichment. See Clark-Fitzpatrick, Inc. v. Long Island R. Co. , 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193 (1987) (finding dismissal of unjust enrichment claims appropriate when the parties did not dispute the existence of a contract). If a contract governs the relationship between the parties in a dispute, any unjust enrichment claims must be dismissed. See Beth Israel Med. Ctr. , 448 F.3d at 586 (affirming dismissal of unjust enrichment claims after determining that a contractual relationship existed between the parties).
Here, Plaintiffs have specifically claimed that the parties' relationship was governed by one or more contracts, e.g. , the Implied Agreement and the Written Agreement. (SAC, ¶¶ 26-33.) Though the parties dispute the content of the Written Agreement and its relationship to the alleged Implied Agreement, this suit arises solely from actions taken by the parties based on one agreement or the other. Having chosen to sue Defendants for breach of an implied-in-fact contract, Plaintiffs are *164 precluded from seeking recovery on an unjust enrichment theory. See Jeda Capital-56, LLC v. Lowe's Home Ctrs., Inc. , No. 5:12-CV-419 (LEK/DEP), 2013 WL 5464647, at *8 (N.D.N.Y. Sept. 30, 2013) (citing Clark-Fitzpatrick , 521 N.Y.S.2d 653, 516 N.E.2d at 193 ). Thus, Plaintiffs' claim for unjust enrichment is dismissed.
III. Plaintiffs' Negligence Claims
Counts 3, 4, 12, and 13 allege that Defendants were negligent and grossly negligent in approving the Ali transactions, failing to inform Plaintiffs that the Ali transactions were fraudulent, and adding Plaintiffs' names to the MATCH list. (SAC, ¶¶ 121-135, 200-216.) The Court finds that Plaintiffs may only proceed on their negligence and gross negligence claims relating to Defendants' reporting of Plaintiffs to the MATCH list.
"Under New York law, the elements of negligence are: (a) the existence of a legal duty to the plaintiff; (b) a breach of that duty; (c) proximate causation; and (d) damages." Jordan v. Tucker, Albin, & Assocs., Inc. , No. 13-CV-6863 (JMA) (SIL), 2017 WL 2223918, at *12 (E.D.N.Y. May 19, 2017) (citing Luina v. Katharine Gibbs Sch. N.Y., Inc. , 37 A.D.3d 555, 830 N.Y.S.2d 263, 264 (2d Dep't 2007) ). "Gross negligence is defined as 'conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.' " Travelers Indem. Co. of Conn. v. Losco Grp., Inc. , 204 F. Supp. 2d 639, 644 (S.D.N.Y. 2002) (quoting Am. Telephone & Telegraph Co. v. The City of New York , 83 F.3d 549, 556 (2d Cir. 1996) ).
"It is well established that where 'the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative.' " Fixed Income Shares: £Series M v. Citibank N.A. , 130 F. Supp. 3d 842, 857 (S.D.N.Y. 2015) (quoting Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC , 692 F.3d 42, 58 (2d Cir. 2012) ); see also In re September 11 Litig. , 640 F. Supp. 2d 323, 338 (S.D.N.Y. 2009) ("A tort claim will not lie as a means to enforce a contractual bargain." (citing N.Y. Univ. v. Cont'l Ins. Co. , 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 767 (1995) )). While tort claims may be maintained if the law imposes a duty that is distinct from a defendant's contractual obligations, a plaintiff may not "transform a simple breach of contract into a tort claim" merely by framing the claim in the language of tort law. Dormitory Auth. v. Samson Constr. Co. , 30 N.Y.3d 704, 70 N.Y.S.3d 893, 94 N.E.3d 456, 460 (2018) (quoting Clark-Fitzpatrick , 521 N.Y.S.2d 653, 516 N.E.2d at 194 ). Thus, if a plaintiff's injury stems solely from a failure to perform on the contract, a tort claim cannot proceed. See Sommer v. Fed. Signal Corp. , 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365, 1369 (1992).
In this case, Plaintiffs largely fail to distinguish their negligence claims from their breach of contract claims, as the former claims predominantly concern Defendants' failure to detect the fraudulent Ali transactions and termination of the Implicit Agreement. Though cloaked in the language of negligence, Plaintiffs' allegations of tortious conduct relating to the Ali transactions merely restate Defendants' contractual obligations under the Implied Agreement. Indeed, the factual allegations set forth in Plaintiffs' contract and negligence claims relating to the Ali transactions are virtually identical. (Compare SAC, ¶¶ 104-106 (stating that Defendants' authorization of the Ali transactions and failure to alert Plaintiffs to their fraudulent nature breached Defendants' obligations under the Implied Agreement), *165 with id. ¶¶ 122-124 (stating that Defendants' breached a duty of care owed to Plaintiff Rockaway by initially indicating that the Ali transactions were approved and failing to alert Plaintiff Rockaway that the transactions were fraudulent).) The gravamen of these allegations is that Defendants failed to comply with their contractual obligations and that Plaintiffs were harmed by those failures. Thus, Plaintiffs' negligence claims relating to the Ali transactions are incompatible with an action to recover for a breach of contract and must be dismissed.
However, Plaintiffs' negligence claims relating to Defendants' referral of Plaintiffs to the MATCH list present a different situation. Plaintiffs allege that Defendants "further breached their duty of care to Plaintiffs by ... placing Plaintiffs on the MATCH list following their careless investigation of the matter." (SAC, ¶ 132.) The SAC states that Defendants took this action intentionally in order to cast blame on Plaintiffs for the fraudulent Ali transactions and to protect the reputation of their credit card processing services. (Id. ¶¶ 180-81.) Plaintiffs also assert that they have been damaged through their inability to obtain affordable credit card processing services. (Id. ¶ 101.)
With respect to the placement of Plaintiffs' names on the MATCH list, the Court finds that Plaintiffs have sufficiently alleged negligence and gross negligence and that these claims are not identical to and consequently foreclosed by Plaintiffs' breach of contract claims. Given the uncertainty regarding the identity and terms of the contract between the parties, the Court cannot find, at this stage, that the contract addressed Defendants' rights and/or obligations with respect to reporting suspected fraudulent activity by one of Defendants' customers to the MATCH list, and thus whether Plaintiffs' negligence claims based on the MATCH list referral implicate a duty that is distinct from Defendants' contractual obligations. See Dormitory Auth. , 70 N.Y.S.3d 893, 94 N.E.3d at 460 (negligence claim must be based on a duty distinct from defendant's contractual obligations). If Plaintiffs can show that the Implied Agreement governed the parties' contractual relationship, they may well be able to show that that agreement did not allow or provide for Defendants to report Plaintiffs to the MATCH list based on suspected fraud, and that, by doing so-especially where the fraud was committed by one of Plaintiffs' customers whose credit card transaction Defendants were responsible for screening-Defendants violated an independent duty of care owed to Plaintiffs.
In sum, Counts 4 and 13 of the SAC will proceed to discovery, but only on Plaintiffs' negligence and gross negligence claims relating to the MATCH list placement. Counts 3 and 12, which do not relate to the MATCH list placement, are dismissed.
IV. Plaintiffs' Fraud Claims
Following the September 20, 2018 oral argument, Plaintiffs filed their SAC to add claims for fraudulent inducement (Count 9) and fraud (Count 10). (SAC, ¶¶ 165-186.) Defendants subsequently supplemented their motion to dismiss, seeking to dismiss these new claims for failure to state a claim. (Defs.' Supp., Dkt. 31.)
A. Fraudulent Inducement
In Count 9, Plaintiffs allege that Maresca, acting as Defendants' agent, falsely told Plaintiffs that Defendants' credit card processing system was secure and capable of identifying fraudulent transactions prior to approval and that Defendants had a policy of investigating fraudulent transactions thoroughly before assigning blame *166 for them. (Id. ¶¶ 166-167.) Plaintiffs assert that these misrepresentations were made for the purpose of inducing Rockaway to enter the Implied Agreement and that Defendants are therefore liable for fraudulent inducement. (Id. ¶¶ 165-175.)
Under New York law, a plaintiff must allege four elements to state a claim for fraudulent inducement: (1) a material misrepresentation of a presently existing or past fact; (2) an intent to deceive; (3) reasonable reliance on the misrepresentation by the plaintiff; and (4) resulting damages. Ipcon Collections LLC v. Costco Wholesale Corp. , 698 F.3d 58, 62 (2d Cir. 2012). Additionally, the plaintiff must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standards, which require a plaintiff to " 'specify the time, place, speaker, and content of the alleged misrepresentations, ... how the misrepresentations were fraudulent' and 'those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.' " Janese v. Fay , 692 F.3d 221, 228 (2d Cir. 2012) (quoting Caputo v. Pfizer, Inc. , 267 F.3d 181, 193 (2d Cir. 2001) ).
Plaintiffs adequately allege each element of a claim for fraudulent inducement. The first element is satisfied by the SAC's allegations that, at the December 12, 2014 meeting with Plaintiffs, Maresca represented that "the credit card services provided by [Defendants] were safe and secure, that the credit card processing system was capable of identifying fraudulent transactions prior to being approved[,] ... and that [Defendants] had a policy of investigating any allegations of fraudulent transactions thoroughly ... before drawing any conclusion about who was responsible for that transaction." (Id. ¶¶ 166-167.) These statements directly implicate the nature and quality of Defendants' services and business practices at the time of the negotiation-information that would have been material to any potential business partner's decision on whether to contract with Defendants. The second element-deceptive intent-is satisfied by the SAC's allegations that Defendants knew that Maresca's statements were false, but nevertheless intended that they be made in order to induce Rockaway to contract with Defendants for credit card processing services. (Id. ¶¶ 168-169.) The third element, reasonable reliance, is satisfied based on Plaintiffs' allegation that they relied on Maresca's representations in deciding to enter into the Implied Agreement and tailoring their retail beverage distribution business around the use and acceptance of credit cards. (Id. ¶ 170.) Lastly, Plaintiffs adequately allege the fourth element of injury by stating that they lost $ 47,000 worth of goods due to the fraudulent Ali transactions and have been unable to acquire cost-effective credit card processing services due to the placement of their names on the MATCH list without sufficient investigation. (Id. ¶¶ 93, 173.) Thus, the Court finds that Plaintiffs have successfully pleaded facts to establish the elements of a fraudulent inducement claim.
Furthermore, the Court finds that Plaintiffs have satisfied Rule 9(b)'s heightened pleading requirements. Plaintiffs have "specif[ied] the time, place, speaker, and content of the alleged misrepresentations." Janese , 692 F.3d at 228. They state that they met with Maresca on December 12, 2014 at Rockaway's place of business at 153-25 Rockaway Boulevard in Jamaica, New York, where Maresca informed Plaintiffs that Defendants' credit card processing services could identify fraudulent transactions and that Defendants had a policy of thoroughly investigating fraudulent transactions prior to assigning blame *167 to any party. (SAC, ¶ 25.) Plaintiffs have further specified "how the [alleged] misrepresentations were fraudulent," Janese , 692 F.3d at 228, by stating that the Ali transactions would not have been approved if Defendants' credit card processing system performed as Maresca described and that Plaintiffs' names would not have been placed on the MATCH list if a thorough investigation of the Ali transactions had been conducted, as Maresca had promised. (SAC, ¶¶ 59-66, 83-90.) Finally, Plaintiffs assert that Defendants' credit card processing system approved seven fraudulent transactions totaling $ 47,000 over the course of one week and that, prior to any meaningful inquiry, Defendants informed the MATCH list that Plaintiffs were engaged in money laundering. (Id. ¶¶ 58, 72-76.) These allegations raise a sufficiently "strong inference" that Defendants exhibited, at least, "a reckless disregard for the truth" of Maresca's representations to Plaintiffs. Janese , 692 F.3d at 228.
Additionally, the Court finds that Defendants may be held vicariously liable for statements made by Maresca in negotiating the contract between Rockaway and Defendants. Whether or not Maresca's alleged misrepresentations were within the scope of his authority to negotiate credit card processing contracts, Defendants may be liable if they later ratified an agent's fraudulent statements. See Dover Ltd. v. A.B. Watley, Inc. , 423 F. Supp. 2d 303, 318 (S.D.N.Y. 2006) ("Even in the absence of actual or apparent authority, a person may still be liable as a principal if he affirms or ratifies 'an act done by one who purports to be acting for the ratifier.' " (quoting Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc. , 758 F. Supp. 908, 912 (S.D.N.Y. 1991) )). An agent's statements are ratified if the principal "retains the benefits derived from them." Adler v. Helman , 169 A.D.2d 925, 564 N.Y.S.2d 828, 830 (3d Dep't 1991) (citation omitted); see also Dover , 423 F. Supp. 2d at 318 ("[R]atification is a 'form of retroactive activity' that occurs when the principal ... 'accepts the benefits of [the] agent's action' already made on his behalf." (quoting Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank , 850 F. Supp. 1199, 1213 (S.D.N.Y. 1994) )). The SAC alleges that Maresca told Plaintiffs that he was Defendants' agent authorized to contract for credit card processing services (SAC, ¶ 20), and Maresca himself confirms that he sold such services on behalf of Defendant First Data Merchant Services and Defendant WFB (Maresca Aff., ¶ 2). Though discovery may confirm that Maresca acted solely on behalf of those two Defendants, the Court finds it inappropriate to resolve this discrepancy on a motion to dismiss. Thus, Plaintiffs have sufficiently alleged that Maresca acted as Defendants' agent in contracting with Rockaway. Furthermore, based on the allegations that Defendants ultimately provided credit card processing services to Rockaway in exchange for fee payments, Defendants may be found to have ratified any agreement negotiated by Maresca and therefore would be liable for any false statements he made to induce Plaintiffs to enter into the agreement. See Banque Arabe , 850 F. Supp. at 1213.
Accordingly, the Court denies Defendants' motion to dismiss Count 9 of the SAC.
B. Fraud
For their fraud claim in Count 10, Plaintiffs contend that Defendants falsely reported to the MATCH list that Plaintiffs had engaged in fraudulent activity and money laundering. (Id. ¶¶ 176-186.) Under New York law, a plaintiff must allege the following elements to state a claim for fraud: (1) a misrepresentation or omission *168 of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff. Wynn v. AC Rochester , 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc. , 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1373 (1996) ).
Count 10 of the complaint fails to allege facts that satisfy the fourth and fifth elements of a fraud claim, namely, that Plaintiffs reasonably relied on Defendants' misrepresentations and suffered injury from that reliance. See id. Instead, Plaintiffs allege that they suffered (and continue to suffer) injury due to the MATCH list 's reliance on Defendants' misrepresentations. (See SAC, ¶ 182 ("[T]he MATCH list was justified in relying on [Defendants'] material misrepresentations").) However, Plaintiffs' theory of fraud has been expressly rejected by the New York Court of Appeals.
In Pasternack v. Laboratory Corporation of America Holdings , 807 F.3d 14 (2d Cir. 2015), the Second Circuit certified a question to the New York Court of Appeals, asking "whether a plaintiff may state a fraud claim, despite the absence of reliance by the plaintiff on the alleged misrepresentations, where a non-plaintiff third party is alleged to have relied on the misrepresentations in a manner that caused injury to the plaintiff." 27 N.Y.3d 817, 37 N.Y.S.3d 750, 59 N.E.3d 485, 492 (2016). The Court of Appeals answered no, "declin[ing] to extend the reliance element of fraud to include a claim based on the reliance of a third party, rather than the plaintiff." Id., 37 N.Y.S.3d 750, 59 N.E.3d at 493. Where, as here, the relevant misrepresentations were not communicated to, or relied on, by the plaintiff, Pasternack forecloses claims for fraud. See Amusement Indus. Inc. v. Stern , 721 F. App'x 9, 12 (2d Cir. 2018) (summary order) (" Pasternack holds that the reliance element of a fraud claim cannot be proved by reference to a defendant's misrepresentation to a third party....").
Accordingly, Count 10 of the SAC is dismissed.
V. Plaintiffs' Remaining Claims
Plaintiffs' remaining claims for relief, Counts 5 and 8, are demands for injunctive relief and punitive damages, rather than independent causes of action. Because independent causes of action continue to exist in this case, however, the Court declines to dismiss them at this point in the case. Cf. Porat v. Lincoln Towers Cmty. Ass'n , No. 04-CV-3199 (LAP), 2005 WL 646093, at *7 (S.D.N.Y. Mar. 21, 2005) (dismissing a demand for relief styled as a cause of action because no independent causes of action could support federal jurisdiction).
CONCLUSION
For the reasons stated herein, Defendants' motion to dismiss the Second Amended Complaint is granted in part and denied in part. The following claims will proceed:
• Count 1 - Breach of the Implied Agreement by approving the Ali transactions and failing to alert Plaintiffs to their fraudulent nature
• Count 2 - Breach of the Implied Agreement by terminating credit card processing services for fraud and reporting Plaintiffs to the MATCH list
• Count 4 - Negligence based on Defendants' referral of Plaintiffs to the MATCH list
• Count 6 - Breach of the Implied Agreement by failing to provide *169 training on how to detect and respond to fraudulent credit card transactions
• Count 9 - Fraudulent Inducement
• Count 11 - Intentional breach of the Implied Agreement
• Count 13 - Gross negligence based on Defendants' referral of Plaintiffs to the MATCH list
SO ORDERED.