**Hirsch v Morningside Park Condominium**

2024 NY Slip Op 33666(U)

October 15, 2024

Supreme Court, New York County

Docket Number: Index No. 157762/2017

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 49M

---------------------------------------------------------------------------X

HIRSCH, ERIC

|  |  |
|---|---|
| **INDEX NO.** | 157762/2017 |

                                    Plaintiff,

|  |  |
|---|---|
| **MOTION DATE** | 10/12/2023 |

                    - v -

|  |  |
|---|---|
| **MOTION SEQ. NO.** | MS 003 |

MORNINGSIDE PARK CONDOMINIUM et al.

                                    Defendants.

**DECISION + ORDER ON
MOTION**

---------------------------------------------------------------------------X

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 003) 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112

were read on this motion to/for                           JUDGMENT - SUMMARY
_____

        In this action relating to water damage in a condominium caused by a burst water pipe in a Packaged Terminal Air Conditioner (PTAC) device, defendants Morningside Park Condominium (Morningside), The Board of Managers of Morningside Park Condominium (Board), and the Andrews Organization (together with Morningside and the Board, "defendants")[1] move for summary judgment pursuant to CPLR 3212. Plaintiff opposes. For the reasons below, the motion is denied in part as to the breach of contract claim but granted in part as to the claims of constructive eviction, return of common charges, and negligence.

## Background

        Plaintiff owns condo Unit 1 ("the Condo") within the Morningside Park Condominium, located at 18 Morningside Avenue, New York, NY 10026 ("the Building") (NYSCEF # 9, Complaint, ¶ 1). Defendant Morningside is an entity organized under New York State law through a Declaration of Condominium dated March 26, 2007, and By-Laws filed on July 17, 2007 (*id.* ¶ 2). Morningside is managed by defendant Board, while defendant the Andrews Organization "is the

---

[1] The Andrews Organization, the Morningside Park Condominium, and the Board of Managers are the only remaining defendants left in the case. All other defendants were voluntarily discontinued (*see* NYSCEF # s 12, 39).

**157762/2017  HIRSCH, ERIC vs. MORNINGSIDE PARK CONDOMINIUM**                    **Page 1 of 9**
**Motion No.  003**

1 of 9

managing agent for the [Board] and [is] responsible for managing the [Building]" (*id.* ¶¶ 2-3).

### *Relevant By-Laws and Responsibilities*

Unit-owners and the condominium itself have different responsibilities regarding repair and maintenance of the building. There is no legitimate dispute that unit-owners are responsible for care over Packaged Terminal Air Conditioner (PTAC) devices—the device that allegedly caused the damages in this case—in their units. Per Morningside's By-Laws, unit-owners are responsible for "maintenance, repairs, and replacements" of certain components in their units—including the PTAC device (*see* NYSCEF # 93, Offering Plan & By-laws, at *208 [By-Laws Article VI, Section 7] ["All maintenance, repairs, and replacements to . . . air conditioning units within the Unit or belonging to the Unit Owner shall be made at the Unit Owner's expense . . ."]). Moreover, when asked during deposition if the PTAC devices are the unit owner's responsibility, plaintiff testified that "it was communicated to me that those are the individual unit owner's responsibility, but I haven't necessarily formally made that decision myself" (NYSCEF # 89, Pltf's Tr. at 239:10-16).

However, unit-owners are not responsible for "Common Elements," which are the defendants' responsibility alone (*see* NYSCEF # 93 at *208 [excluding "electrical" and "plumbing" Common Elements]; *see also id.* at *201 [defining the Board's powers and responsibilities to care for Common Elements]). According to a Condominium Offering Plan, "General Common Elements" include, among other things:

> (3) All central and appurtenant installations for services such as power, light, air-conditioning (if any), intercom, telephone, television, gas, **hot and cold water**, **heat (including all pipes, ducts, wires, shoots, cables, and conduits used in connection therewith)** and all other mechanical equipment spaces.
>
> (4) **Water service pipes and sewer pipes**

(NYSCEF # 93 at *15 [Offering Plan § 2(A)(3)-(4)] [emphasis added]).

### *Plaintiff's Condo and Damages*

Plaintiff became the owner of the Condo through a deed dated November 9, 2007, which was recorded and filed in the New York City Department of Finance, Office of the City Register, on December 28, 2007 (NYSCEF # 9 ¶ 16). The building was a brand-new construction in 2007, and a PTAC device was installed in plaintiff's master bedroom (NYSCEF # 101, Pltf.'s Resp. to Defs.' Stmt. of Undisp. Facts, ¶ 2).

**157762/2017  HIRSCH, ERIC vs. MORNINGSIDE PARK CONDOMINIUM**
**Motion No.  003**

Page 2 of 9

2 of 9

[* 2]

Plaintiff never moved into his Condo. He alleges he intended to use the Condo as his primary residence but was unable to do so due to ongoing construction defects and plumbing issues (NYSCEF # 9 ¶ 17). More specifically, plaintiff alleges that his Condo suffered significant damage due to construction defects and negligent maintenance of the condominium's common elements, including water service pipes, sewer pipes, foundations, columns, beams, supports, bearing walls, and portions of the exterior walls and insulation (*id.* ¶ 18).

Plaintiff alleges that on or about August 31, 2015, the Condo sustained extensive damage when an extreme amount of wastewater and sewage backed up and expelled into the unit due to plumbing defects and a failure to maintain the system properly ("the Back Up") (*id.* ¶ 19). The Back Up rendered the Condo completely uninhabitable (*id.*).

Following the Back Up, plaintiff discovered widespread mold caused by leaks in the exterior wall and/or membrane of the building, which had existed for an undetermined period (*id.* ¶ 20). Additionally, extensive water damage was found in the walls and ceilings, attributed to internal leaks and plumbing problems within the common elements (*id.*). Plaintiff asserts that the condominium is solely responsible for maintaining these elements, as stipulated in the Declaration and By-Laws (*id.* ¶ 22). Despite notifying the condominium of similar plumbing issues since December 2013, which were promised to be repaired, plaintiff claims that defendants failed to make adequate repairs, leading to the extensive damage experienced during the Back Up (*id.* ¶¶ 20 - 25).

Plaintiff brought this action on August 30, 2017, bringing claims of breach of contract, constructive eviction and return of common charges, and negligence (*id.* ¶¶ 27-48). Defendants now move for summary judgment, arguing that the damage to plaintiff's Condo was actually caused by a February 2015 failure of the PTAC device. Specifically, defendants argue that plaintiff failed to heat his apartment in February 2015, causing the PTAC's pipes to freeze and burst, thereby causing water damage. There is no dispute that the PTAC failed, nor any dispute that the PTAC's failure damaged the underneath ceiling, recreation space ceiling, and floor of the master bedroom and recreation space (NYSCEF # 101 ¶ 3 ["Plaintiff admitted that water and steam from the PTAC failure damaged the areas indicated in Paragraph 3"]).

## Parties' Arguments

Defendants argue that plaintiff's property damages claims[2] should be dismissed because plaintiff was responsible for the PTAC device. Regarding the PTAC device, defendants argue that the By-Laws give unit-owners responsibility for maintenance and repair of PTAC devices (NYSCEF # 95, Def's MOL, ¶¶ 10-15).

---

[2] It is unclear what claims defendants refer to here because plaintiff's only claims are for breach of contract, constructive eviction, and negligence.

**157762/2017  HIRSCH, ERIC vs. MORNINGSIDE PARK CONDOMINIUM**  **Page 3 of 9**
**Motion No.  003**

Defendants argue plaintiff, who never resided in his Condo, left it unheated in February 2015, causing the PTAC's pipes to freeze and burst, thus leaking water and causing damage (*id.* ¶ 16). Defendants point out that no other apartments reported similar issues with their PTAC units, as those apartments were adequately heated and maintained, preventing their pipes from freezing (*id.*, citing NYSCEF # 90, Fred Scott Tr. at 77:10-16).[3]

Defendants also argue that the constructive eviction claim must be dismissed because plaintiff never actually resided in the Condo, which bars his recovery under the case law (*id.* ¶ 24, citing *Frisch v Bellmarc Mgmt., Inc.*, 190 AD2d 383, 390 [1st Dept 1993] and *Transus LLC v Beach View Apartment Corp.*, 72 Misc 3d 129[A] [unreported, App. Term 1st Dept. 2021]). Defendants further assert that the statutory warranty of habitability does not apply to condominium unit owners who purchased their condos as investments and never resided in them, nor can owners withhold payment of common charges due to defective conditions or board disagreements.

Defendants argue that plaintiff's breach of contract claims should be dismissed because defendants acted in good faith to try to fulfill their contractual obligations. For example, defendants argue they "hired an expert to conduct mold testing and/or remediation," but were prohibited from accessing the Condo by plaintiff (*id.* ¶¶ 32-33, citing NYSCEF # 90 at 74:15–75:12).

Finally, defendants argue that plaintiff's negligence claim should be dismissed as duplicative of the breach of contract claims. Defendants assert that the damages claimed by the plaintiff are clearly within the scope of the written agreement between the parties (*id.* ¶¶ 38-39). Defendants argue that plaintiff has not demonstrated any negligence on defendants' part that is separate from the contractual issues already addressed (*id.*). Therefore, the negligence claim is redundant and should be dismissed, as it fails to meet the legal requirements for a separate tort action.

Plaintiff responds that defendants failed to present admissible evidence to establish entitlement of summary judgment, that there are genuine issues of material facts in dispute, and that plaintiff has sufficiently alleged a cause of action for negligence. Plaintiff argues that defendants mischaracterize testimony from the depositions of plaintiff, Fred Scott (the President of the Board of Managers), and Fihlo Thomas (an employee of The Andrews Organization, the property managers for the condominium) (NYSCEF # 100, Pltf's Response, at 5-9). Plaintiff also argues

---

[3] Defendants also argue that other sources of damage are plaintiff's own fault, but it is unclear what if any relevance those arguments have to this case. Defendants assert that the By-Laws give unit-owners responsibility to maintain their private backyards, and that any property damage resulting from the failure to maintain a backyard drainage system is directly attributable to the plaintiff's negligence in maintaining their backyard (*id.* ¶¶ 20-22). However, plaintiff does not appear to make any claims or allegations about a backyard drainage system.

157762/2017 HIRSCH, ERIC vs. MORNINGSIDE PARK CONDOMINIUM
Motion No. 003
Page 4 of 9

[* 4]
4 of 9

that the cited excerpts do not support defendants' arguments and, in some cases, contradict them (*id.*). Plaintiff also argues that defendants' attorney affirmation, which was filed alongside defendants' memorandum of law and statement of material facts, is a description of facts from someone lacking personal knowledge, and therefore holds no evidentiary value (*id.* at 4-5, citing *Thompson v Pizzaro*, 155 AD3d 423 [1st Dept 2017]).

Plaintiff contends that there are significant questions regarding both the cause of the PTAC unit failure and the extent of the resulting damage. While defendants acknowledge some responsibility for past water-related losses in the plaintiff's condo, they argued that all damages can be attributed to the plaintiff's failure to heat and the subsequent PTAC failure. Plaintiff contests this narrative, highlighting the lack of certainty about the cause of the PTAC's failure in deposition testimonies, as well as his affidavit claiming he had a habit of inspecting his Condo (*id.* at 10-12, citing, e.g., NYSCEF # 90 at 76:22 [Scott testifying that there was "a lot of steam…a lot of heat" from the PTAC flood] and NYSCEF # 102, Pltf's Aff). Moreover, plaintiff provides a 2011 report from Dynamic Structures Inc., which warned Morningside that mechanized valves connected to the PTACs must be replaced or else risk damage if pipes became too cold (NYSCEF # 100 at 11-12).

Plaintiff also argues defendants were negligent because they were aware of defective valves within the building and neglected to take corrective action, leading to substantial property damage (*id.* at 14). Plaintiff argues that the defendants had actual notice of these issues since August 2011 but did not address them, demonstrating negligence (*id.*).

Defendants reply that plaintiff's negligence claim fails because it arises from the same conduct as the breach of contract claim and alleges no distinct damages. They assert that a negligence claim is not valid if it merely duplicates breach of contract allegations without demonstrating an independent legal duty. Citing precedents, defendants contend that the plaintiff's negligence claim is essentially a rephrasing of the breach of contract claim and thus should be dismissed.

## Legal Standard

A party moving for summary judgment must make a prima facie showing that it is entitled to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Failure to make such a showing mandates denial of the motion, regardless of the sufficiency of the opposing papers (*see Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993]; *Winegrad v N.Y. Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Only once a prima facie showing is made does the burden shift to the party opposing the motion to produce evidentiary proof, in admissible form, sufficient to establish the existence of material issues of fact which require a trial of the action (*see Zuckerman v City of New York*, 49 NY2d 557, 562-563 [1980]). On a motion for summary judgment, facts must be viewed in the light most favorable to the non-

157762/2017 HIRSCH, ERIC vs. MORNINGSIDE PARK CONDOMINIUM Page 5 of 9
Motion No. 003

5 of 9

[* 5]

moving party (*see Vega v Restani Constr. Corp*, 18 NY3d 499, 503 [2012]). Although summary judgment is "considered a drastic remedy," "when there is no genuine issue to be resolved at trial, the case should be summarily decided" (*see Andre v. Pomeroy*, 35 NY2d 361, 364 [1974]).

## Discussion

### I. Breach of Condominium By-Laws

Plaintiff sues defendants for breach of contract on the theory that they breached the By-Laws by failing to "maintain, repair, and/or replace the plumbing, exterior walls, and other Common Elements" damaged by both the Back-Up and "leaks in the exterior wall" (NYSCEF # 9 ¶ 30).

It is well settled that "the administration of the condominium's affairs is governed principally by its bylaws, which are, in essence, an agreement among all of the individual unit owners as to the manner in which the condominium will operate, and which set forth the respective rights and obligations of unit owners, both with respect to their own units and the condominium's common elements" (*Bd. of Managers of Vill. View Condo. v Forman*, 78 AD3d 627, 629 [2d Dept 2010]). "A violation of bylaws is akin to a breach of contract" (*Pascual v Rustic Woods Homeowners Ass'n, Inc.*, 134 AD3d 1003, 1005 [2d Dept 2015], citing *Pomerance v McGrath*, 124 AD3d 481, 482 [1st Dept 2015]; *Stony Brook Shores Prop. Owners Ass'n, Inc. v Liscia*, 169 AD2d 712, 713 [2d Dept 1991]).

In the present case, the By-Laws of Morningside Park Condominium govern the obligations, responsibilities, and relationships between the defendants and the individual condo owners, including the plaintiff. Per Article VI, Section 7, plaintiff has responsibility to maintain "air conditioning units" like the PTAC (NYSCEF # 93 at *208). Defendants have responsibility to maintain "Common Elements" like pipes for heating, water service, and sewage (*id.* at *15).

The principal question raised by the parties is who caused the damage to plaintiff's Condo. Defendants argue it was plaintiff's own fault because he left the heat off during February 2015 which caused the PTAC device's pipes to freeze and burst. Plaintiff responds that defendants have failed to provide evidence proving that plaintiff did not heat the Condo or that the PTAC's failure was not caused by other reasonable alternatives.

Plaintiff is correct; defendants have failed to meet their burden to prove plaintiff caused the PTAC device's failure. As an initial matter, defendants do not submit any evidence whatsoever that plaintiff did not heat his Condo in February 2015. For instance, in defendants' Statement of Undisputed Facts, defendants cite to plaintiff's deposition to show that plaintiff did not leave his heat on and thus caused the PTAC to burst (NYSCEF # 94 ¶ 2, citing NYSCEF # 89 at 235:9 -

**157762/2017  HIRSCH, ERIC vs. MORNINGSIDE PARK CONDOMINIUM**
Motion No.  003

Page 6 of 9

[* 6]

236:13). But plaintiff says no such thing in the cited excerpt. Instead, plaintiff is asked whether there were "issues with [his] PTAC unit where the unit was freezing over" in February of 2015, and plaintiff responded that he could not "say it was freezing over, but there was an issue with a unit" (NYSCEF # 89 at 235:9-21). Similarly, defendants argue in their brief that "plaintiff failed to maintain any heat in his apartment" which "[n]aturally" caused the PTAC pipes to burst (NYSCEF # 95 ¶ 15). Yet defendants do not cite *anything* in support of this assertion. The next closest citation is to Scott's deposition, but at best he merely says that there were no issues with PTACs in other apartments (*id.; see also* NYSCEF # 90 at 77:10-16 [only PTAC in the Condo had flooding issue]). Scott does not specifically attribute the lack of problems in other apartments to adequate heating (*see* NYSCEF # 90 at 77:10-16). Thus, defendants have failed to provide any evidence that plaintiff failed to heat his apartment, much less that the PTAC froze and burst.

Defendants also failed to submit evidence establishing that the PTAC's failure was not caused by other reasonable alternatives. For instance, plaintiff submits a 2011 report by Dynamic Structures that found that the "motorized valves" installed with the PTAC devices throughout the building "must be replaced as they could cause major water damage if the pipes get below a certain temperature during the winter months" (NYSCEF # 104, Dynamic Structures Report, at 11-12). Further interpretation of the evidence requires some technical expertise to help explain whether these valves are Common Elements or not.

Consequently, given that the PTAC failure is a matter necessitating technical expertise and investigation, and considering that neither party has furnished an expert report showing the primary cause of this failure, it appears premature at this juncture to definitively determine what caused the PTAC to malfunction and assign liability accordingly.

## II.    *Constructive Eviction and Return of Common Charges*

Plaintiff claims that defendant's failure to make necessary repairs to the common elements led to his condo becoming uninhabitable, thus constructively evicting him. He also requests a return of all common charges for the same reasons.

"To be an eviction, constructive or actual, there must be a wrongful act by the landlord which deprives the tenant of the beneficial enjoyment or actual possession of the demised premises" (*Barash v Pennsylvania Term. Real Estate Corp.*, 26 NY2d 77, 82 [1970]). It is well established that "[c]ondominium-unit owners are not protected by the warranty of habitability, since they do not hold a lease for the premises but possess a fee-ownership interest in the subject premises" (*Katz v Board of Mgrs., One Union Sq. E. Condominium, N.Y., N.Y.*, 25 Misc 3d 1238[A] [Sup Ct, NY County 2009]). Also, the warranty of habitability only applies to a tenant living in the apartment (*see 20 Broad St. Owner LLC v Sonder USA, Inc.*, 208 NYS3d 612, 613 [1st Dept 2024]). Additionally, the First Department has held

157762/2017   HIRSCH, ERIC vs. MORNINGSIDE PARK CONDOMINIUM                    Page 7 of 9
Motion No. 003

7 of 9

that even if a landlord-tenant relationship could be found between a condo board and a condo owner, an owner cannot avail himself of the protection of the statutory warranty of habitability if he does not reside in the unit (*see Frisch v Bellmarc Mgt., Inc.*, 190 AD2d 383, 390 [1st Dept 1993]).

In this case, plaintiff is the owner of the Condo, not a tenant. Consequently, the parties do not maintain a landlord-tenant relationship. In addition, plaintiff never physically moved into his apartment. Therefore, plaintiff cannot avail himself of protection under the warranty of habitability and he cannot be constructively evicted since he never resided in the apartment. The court should grant summary judgment on this claim.

Moreover, plaintiff is not entitled to a return of common charges, because "an individual unit owner . . . cannot withhold payment of common charges and assessments in derogation of the by-laws of the condominium based on defective conditions in his unit or in the common areas" (*id.* at 38).

### III.  *Negligence*

For a negligence claim to stand separately from a breach of contract claim, there must be an independent legal duty that is not solely derived from the contractual obligations. "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated" (*Dormitory Auth. of the State of NY v Samson Constr. Co.*, 30 NY3d 704, 711 [2018]).

In his cause of action for negligence, plaintiff alleged that defendants failed to properly maintain and/or repair the common elements of the condominium. This allegation is "merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract" (*Clark-Fitzpatrick, Inc. v Long Is. R. Co.*, 70 NY2d 382, 390 [1987]).

Here, plaintiff failed to specify any duty breached by defendants that is independent of the alleged contractual obligations. Merely charging a breach of a "duty of due care", employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim (*id.*).

In the absence of an assertion of an independent duty by plaintiff, the negligence claim is duplicative of the breach of contract claim. Therefore, the court must dismiss the plaintiff's negligence claim.

### Conclusion

In consideration of the above, it is hereby

[* 8]

ORDERED that defendants' Motion for Summary Judgment (MS 003) is granted in part as to the constructive eviction and negligence claims, and denied in part as to the breach of contract claim; and it is further

ORDERED that the parties are to report to Part 40, the trial part, and it is further

ORDERED that counsel for defendants is to serve all parties this order, with notice of entry, within ten days of this order.

10/15/2024
DATE

MARGARET A. CHAN, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

157762/2017   HIRSCH, ERIC vs. MORNINGSIDE PARK CONDOMINIUM
Motion No.  003

Page 9 of 9

9 of 9