# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 19
Bill Birds, Inc. et al.,
  Appellants,
   v.
Stein Law Firm, P.C. et al.,
  Respondents.

Thomas Torto, for appellant.
James D. Spithogiannis, for respondents.
Andrew Lavoot Bluestone, Jeffrey A. Jannuzzo, and Anita Bernstein, amici curiae.

DiFIORE, Chief Judge:

The singular issue before us in this appeal is whether the Appellate Division erred in dismissing plaintiffs' claim under Judiciary Law § 487 (1) against their former attorneys who allegedly induced them to bring a meritless lawsuit in order to generate a legal fee. Defendants met their initial burden on summary judgment with respect to whether their alleged deceit occurred during the pendency of litigation, and plaintiffs failed to raise a

- 1 -

triable issue of fact on that issue in response. We therefore affirm the Appellate Division order granting summary judgment dismissing the complaint.

Defendants, attorney Mitchell Stein and his law firm, Stein Law P.C., represented plaintiffs Bill Birds, Inc., which manufactures decorative metal automobile parts, and its president in a trademark dispute against General Motors, Service Parts Operation (GM) and Equity Management, Inc. (EMI). After the complaint in that action was dismissed, plaintiffs commenced this action against defendants alleging, as relevant here, a violation of Judiciary Law § 487(1).[1]

Plaintiffs alleged that defendants advised them that GM had possibly abandoned the trademarks GM had licensed to plaintiffs for over a decade, advising plaintiffs that they had meritorious claims against GM. Based on this advice, plaintiffs commenced the underlying federal trademark action against GM and EMI in the United States District Court for the Eastern District of New York, incurring $25,000 in attorney fees. Plaintiffs alleged that the underlying action—which was dismissed as commenced in an improper venue based on a forum selection clause in plaintiffs' licensing agreements with GM— clearly lacked merit, in part because a provision in the licensing agreement prohibited plaintiffs from challenging GM's ownership of the relevant intellectual property. Plaintiffs further alleged that defendants concealed the dismissal of the underlying action for

---

[1] Plaintiffs also asserted legal malpractice, breach of contract and fraud claims. Among other allegations, on their legal malpractice cause of action plaintiffs alleged that their claims against GM were meritorious but that defendants negligently failed to prosecute them properly. Those claims were dismissed by Supreme Court on defendants' summary judgment motion, and plaintiffs did not appeal that dismissal to the Appellate Division. The dismissal of those claims therefore is not before us on this appeal.

approximately nine months and subsequently lied about the reason for the delay, claiming that the federal court did not release its decision promptly.

After answering the complaint, defendants moved for summary judgment, arguing, among other things, that the Judiciary Law § 487 claim must be dismissed because plaintiffs failed to allege any misrepresentations made in the context of ongoing litigation. Plaintiffs opposed the motion, submitting affidavits alleging essentially the same conduct described in the complaint. In addition, plaintiffs submitted an expert affidavit from an attorney who averred that defendants' legal advice regarding GM's rights to the licensed trademarks was incorrect and that defendants induced plaintiffs into litigation under "false pretenses."

Supreme Court granted defendants' motion for summary judgment in part, dismissing the legal malpractice, breach of contract and fraud claims, but denied the motion with respect to the section 487 claim, concluding that plaintiffs' expert affidavit raised triable issues of fact. Defendants appealed from so much of the order of Supreme Court that denied summary judgment on the section 487 claim, and the Appellate Division reversed, insofar as appealed from by defendants, and granted defendants summary judgment on that claim, dismissing the complaint in its entirety (164 AD3d 635 [2d Dept 2018]). The court reasoned, inter alia, that plaintiffs failed to allege that defendants intended to deceive the court or any party, as required by the statute. This Court granted plaintiffs' motion for leave to appeal (32 NY3d 913 [2019]).

Under Judiciary Law § 487 (1), an attorney "who[ i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any

party" is guilty of a misdemeanor and may be liable to the injured party for treble damages in a civil action. In our decisions in Amalfitano v Rosenberg (12 NY3d 8 [2009]) and Melcher v Greenberg Traurig, LLP (23 NY3d 10 [2014]), we examined the ancient origins of section 487, noting that the claim could be traced back to old English common law and was first codified in 1275 (Amalfitano, 12 NY3d at 12; Melcher, 23 NY3d at 14-15). The original statute made it a criminal offense for a "Pleader" to engage in "Deceit or Collusion in the King's Court" (Amalfitano, 12 NY3d at 12). The law was carried over to colonial New York and, as early as 1787, a New York statute similarly stated that any attorney guilty of deceit or collusion "in any court of justice" shall be punished (id.). "[V]irtually identical" language proscribing intentional deceit by attorneys was codified in both the civil and penal law in the 1800s, and subsequently transferred to the Judiciary Law in 1965 (id. at 12-13).

Similar to fraud, Judiciary Law § 487—covering intentional deceit and collusion— imposes liability for the making of false statements with scienter. But in light of the history of the statute, we concluded in Amalfitano that Judiciary Law § 487 is not a codification of common law fraud and therefore does not require a showing of justifiable reliance (id. at 12, 14). In other words, liability under the statute does not depend on whether the court or party to whom the statement is made is actually misled by the attorney's intentional false statement (id. at 14). Given the requirement that the conduct involve "deceit or collusion" and be intentional, liability under the statute does not extend to negligent acts or conduct that constitutes only legal malpractice, evincing a lack of professional competency. Indeed, because a violation of section 487 is a crime, we must be circumspect to ensure "that penal

responsibility is not extended beyond the fair scope of the statutory mandate" (People v Hedgeman, 70 NY2d 533, 537 [1987] [quotation marks and citation omitted]).

In Looff v Lawton, this Court held, under a predecessor statute that employed substantially the same language now found in Judiciary Law § 487 (1), that allegations that an attorney provided "false and untrue" legal advice to induce plaintiffs to bring an unnecessary lawsuit, motivated solely by the attorney's desire to collect a large fee, did not state a claim because the statute applied only to conduct that occurs in the context of "an action pending in a court"—not misleading advice preceding an action (97 NY 478, 480, 482 [1884]). We explained that, because the purported deceit occurred before the judicial action was commenced, "there was no court or party to be deceived within the meaning of the statute" (id. at 482). In contrast, the conduct underlying the claim in Amalfitano—the making of a false statement of fact in the complaint regarding the client's partnership status in a family business (see Amalfitano, 12 NY3d at 11)—fell squarely within the scope of the statute because the misrepresentations at issue there were made in the context of an action pending in court.

As reflected in our decisions in Looff and Amalfitano, the purpose of Judiciary Law § 487 (1) is to safeguard an attorney's special obligation of honesty and fair dealing in the course of litigation—a pillar of the profession. Our legal system depends on the integrity of attorneys who fulfill the role of officers of the court, furthering its truth-seeking function (see Amalfitano, 12NY3d at 14). Thus, "[t]he statute is limited to a peculiar class of citizens, from whom the law exacts a reasonable degree of skill, and the utmost good faith in the conduct and management of the business [e]ntrusted to them . . . To mislead the court

or a party is to deceive it; and, if knowingly done, constitutes criminal deceit under the statute" (id. at 14, quoting Looff v Lawton, 14 Hun 588, 590 [2d Dept 1878] [emphasis added]). Moreover, the language of the statute is aimed at a particular type of deceit or collusion—done by an attorney with the intent to mislead the court or a party (see id.; Looff, 97 NY at 482). While attorneys must zealously advocate for their clients, such deception or collusion is antithetical to appropriate advocacy, functioning as a fraud on the court or a party. Given the statute's origins and purpose, it provides a particularized civil remedy, and criminal liability, for a specialized form of attorney misconduct occurring during the pendency of litigation (see id.).

Here, viewing the facts in the light most favorable to plaintiffs (see De Lourdes Torres v Jones, 26 NY3d 742, 763 [2016]), defendants established prima facie entitlement to judgment as a matter of law on the Judiciary Law § 487 (1) claim by demonstrating that plaintiffs failed to allege that defendants engaged in deceit or collusion during the course of the underlying federal intellectual property lawsuit against GM and EMI.[2] In response, plaintiffs failed to satisfy their burden to establish material, triable issues of fact (id.). The affidavits plaintiffs submitted in opposition to summary judgment did not allege that defendants committed any acts of deceit or collusion during the pendency of the underlying

---

[2] The dissent characterizes plaintiffs' complaint in this action as claiming that "defendants made initial and continued false representations to the court about the legal and factual basis for the federal action" (dissenting op at 21). Plaintiffs made no such assertion. The complaint merely alleges that defendants made "false representations" *to plaintiffs regarding their legal rights*, which induced them to file suit. Plaintiffs neither alleged nor offered proof that defendants made "any fraudulent statement" to the court during the underlying intellectual property lawsuit (id. at 22).

federal lawsuit. To the extent defendants were alleged to have made deceitful statements, plaintiffs' allegation that defendants induced them to file a meritless lawsuit based on misleading legal advice preceding commencement of the lawsuit is not meaningfully distinguishable from the conduct we deemed insufficient to state a viable attorney deceit claim in Looff (97 NY at 482). The statute does not encompass the filing of a pleading or brief containing nonmeritorious legal arguments, as such statements cannot support a claim under the statute.[3] Similarly, even assuming it constituted deceit or collusion, defendants' alleged months-long delay in informing plaintiffs that their federal lawsuit had been dismissed occurred after the litigation had ended and therefore falls outside the scope of Judiciary Law § 487 (1). Thus, plaintiffs' Judiciary Law § 487 cause of action was properly dismissed.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

---

[3] The dissent concludes that the statute extends to "an attorney's intentional filing of a frivolous lawsuit for the sole purpose of obtaining unwarranted legal fees" (dissenting op at 25). This conclusion is inconsistent with the statutory language and its legislative history. Judiciary Law § 487(1) guards against false statements by lawyers during litigation, rising to the level of intentional deceit or collusion; it was not designed to curtail attorneys' expressions of views concerning what the law is or should be, nor does it include merely poor lawyering, negligent legal research or the giving of questionable legal advice. Other mechanisms are available to address the filing of frivolous lawsuits, among other attorney shortcomings, such as litigation sanctions, attorney misconduct proceedings and legal malpractice actions.

Bill Birds v Stein Law Firm

No. 19

RIVERA, J. (dissenting):

Plaintiffs allege that their attorney induced them to pursue a frivolous lawsuit for the sole purpose of charging them thousands of dollars in legal fees and with counsel's full knowledge ab initio that the claims were meritless. As our precedents establish, an attorney

- 1 -

may be liable for common-law fraud against a client, but when the conduct includes deceit on the court or a party in a pending lawsuit, the attorney is separately guilty of a misdemeanor and liable for enhanced civil damages under Judiciary Law § 487 (see Melcher v Greenberg Traurig, LLP, 23 NY3d 10, 15 [2014]; see also Judiciary Law § 487). According to plaintiffs, their attorney intentionally, and without regard to the ultimate outcome for plaintiffs, perpetuated a charade on the court and them by filing and pursuing what the attorney knew all along was a meritless action—one doomed to fail—which caused plaintiffs to pay the attorney's unwarranted legal fees. I dissent because plaintiffs' cause of action for attorney deceit was improperly dismissed on summary judgment as they asserted a viable legal theory and there exist triable issues of fact as to whether the alleged deceit caused plaintiffs' any damages.

I.

Factual and Procedural History and the Parties' Arguments on this Appeal

A. Plaintiffs Seek Legal Advice from Defendants

Plaintiffs are Bill Birds, Inc., a New York corporation that manufacturers and distributes decorative metal automotive parts for antique autos, and its president and owner, William Pelinsky. In February 1995, under a licensing agreement with General Motors automobiles, Pelinsky, then doing business as Bill Birds, acknowledged, amongst other things, GM's title to certain trademarks and manufacturing technology and agreed not to attack or impair GM's intellectual property rights.

After eleven years of renewing the agreement, Pelinsky became concerned that he was being treated unfairly by GM. He sought legal advice from defendant Mitchell A. Stein, principal of codefendant Stein Law Firm, P.C., regarding Bill Birds' ownership of trademarks and copyrights ostensibly covered by the agreements. According to plaintiffs, defendants represented that they thoroughly researched this area of the law and concluded that GM did not own the rights licensed to Bill Birds. On the strength of this advice, plaintiffs chose not to renew the agreement with GM.

B. <u>Defendants File a Federal Lawsuit on Plaintiffs' Behalf</u>

Thereafter, GM, through its licensing manager, Equity Management, Inc. (EMI), threatened legal action to prevent plaintiffs' manufacture of the parts covered under the prior agreements. Based on defendants' legal advice that plaintiffs would prevail against GM because "plaintiffs had superior rights to the trademarks and copyrights," plaintiffs retained defendants to litigate on their behalf against GM and EMI. Defendants filed an action in New York federal district court alleging fraud on the ground that GM knowingly misrepresented that it had registered trademarks so that Polinsky would enter the licensing agreements. By way of example, the complaint alleges,

> "plaintiffs paid a license fee and royalties, pursuant to various purported license agreements and term sheets, to defendants in order for plaintiff to use certain intellectual property defendants represented were owned by them, only to now find out that defendants either did not own or have authority to license said intellectual property, or that said intellectual property does not exist or apply to the goods sold by plaintiffs. · · ·

> "[D]espite representing otherwise, defendants do not own valid rights for the vast majority of the products and marks included in the purported License Agreements for use with General Motors automobile emblems and/or trim . . . ."

The federal complaint also alleged that GM's false claims of ownership or merchandising rights to the trademarks, trade names, service marks, copyrights, and related items licensed to plaintiffs constituted a breach of the licensing agreements between the parties.

GM and EMI moved to dismiss, in part, under Federal Rule of Civil Procedure rule 12 (b) (3) for improper venue, based on the forum selection clause in the parties' last two licensing agreements. The clause provides that "any court proceeding relating to any controversy arising under this agreement shall be in the state or federal courts located in Michigan." Stein filed an affirmation and memorandum of law in opposition to the motion to dismiss, arguing that the licensing agreement, including the venue provision, was unenforceable because plaintiffs entered the agreement based on GM's fraudulent misrepresentations. His affirmation states that the licensing agreements "<u>never</u> appear to represent and warrant that the licensor (defendants) have the rights to license or that there is any IP to license" (emphasis in original). Stein further affirms that GM induced plaintiffs to enter into the licensing arrangement with GM by asserting ownership over certain intellectual property that "GM does not own." Stein states, "had plaintiffs known that defendants did not own the intellectual property plaintiffs would have never relied upon the same, paid money to their detriment, and agreed to become bound by the same."

The court granted the motion based on improper venue, concluding that plaintiffs "failed to rebut the presumption of enforceability" of the forum selection clause as they did

not "meet the heavy burden of establishing that an enforceable forum selection clause should be deemed unreasonable based on fraud." In rejecting plaintiffs' fraud argument, the court noted that "[p]laintiffs overlook the prevailing law governing this issue" and that plaintiffs' "[i]nconvenience and expense do not meet the test for unreasonableness."

According to plaintiffs, despite their numerous inquiries, defendants did not inform them that the action had been dismissed for over eight months, waiting to notify them of the dismissal until the final month before the expiration of the statute of limitations.

C.   Plaintiffs File a State Court Action Against Defendants for, Among Other Things, Violation of Judiciary Law § 487

Represented by new counsel, plaintiffs filed the instant state court action against defendants, seeking damages for defendants' alleged violation of Judiciary Law § 487, as well as malpractice, fraud and breach of contract arising from defendants' representation in the federal lawsuit.[1] As relevant to this appeal, plaintiffs alleged that defendants induced plaintiffs to bring a "fictitious cause of action" as a means to achieve a nonlegitimate end, i.e., "solely" for the purpose of generating $25,000 in attorney fees, in violation of section 487. Specifically, plaintiffs alleged that defendants falsely represented they had "thoroughly researched" plaintiffs' claims, that they were valid claims, and that plaintiffs

---

[1] The complaint asserted legal malpractice and breach of contract based on Stein's alleged failure to prosecute plaintiffs' claims properly, diligently, competently and fully. Plaintiffs' cause of action for fraud alleged Stein falsely held himself out to the public as an expert in intellectual property and, misrepresented to plaintiffs that their claims had merit and that they would prevail should they proceed to litigation, intending to induce plaintiffs to pay fees to defendants.

had superior rights to the trademarks at issue, knowing defendants could not successfully prosecute those claims.

Defendants disclaimed liability and eventually moved for summary judgment under CPLR 3212. In support of the motion, defendants submitted a memorandum of law, an attorney affirmation and reply affirmation, a sworn affidavit of Stein, filings from the federal litigation, the licensing agreement dated March 21, 2001, excerpts from the transcript of Pelinsky's deposition, and a letter from Stein's counsel to Pelinsky's counsel seeking execution of the transcript of Pelinsky's deposition under CPLR 3116 and requesting the production of certain documents and information. They argued, in part, that plaintiffs could not have prevailed in the federal action as a matter of law because they were estopped by the licensing agreement's "no challenge" clause from contesting GM's ownership of the trademarks. As to the Judiciary Law § 487 cause of action, defendants asserted three legal bases for dismissal: (1) any alleged misrepresentations were unactionable because they occurred outside the federal litigation; (2) plaintiffs failed to establish "a chronic, extreme pattern of legal delinquency;" and (3) plaintiffs could not establish that defendants' wrongdoing cause plaintiffs to suffer damages.

In opposition, plaintiffs submitted the affidavit of an attorney specializing in intellectual property, who averred it was "clear" to him defendants did not "accurately represent the situation between the plaintiffs as licensees of GM." He explained that Stein's alleged statement, "I looked in the trademark office files and found nobody really owned anything . . ." was "not an accepted practice to determine whether a trademark is 'owned' by anyone." Instead, plaintiffs' expert explained that to properly search "the

trademark office files," each of the over 200 products in an attachment incorporated into the licensing agreement would have to be "clearly identified . . . .  For many of the Licensed Products it [was] unclear what specific model name/trademark [was] identified by the Licensed Product."  Thus, it would not have been possible for Stein to determine GM's ownership interest in at least this subset of licensed products.  In fact, three trademarks for goods directly related to automobiles were current registered trademarks at the United States Patent and Trademark Office in early 2006, at the time defendants allegedly "looked into the trademark office files."  Thus, GM had exclusive rights to at least these trademarks at the time plaintiffs filed the federal lawsuit.[2]  The attorney further commented on the failure to properly advise plaintiffs:

> "[D]efendant[']s statements leave me in awe in that the defendants did not explain that in fact plaintiffs had no rights to the decorative parts they were manufacturing and that it did not matter whether they were bona fide registered trademarks or parts in the public domain, they were subject to the terms of the License Agreement."

The lack of advice was stunning enough, but the attorney was "further in awe" that defendants encouraged plaintiffs to litigate because "the specific trademark subject matter of the litigation was precluded from being litigated during and after licensing by the License Agreement" and that defendants "then pursued the litigation in New York when the defendants knew or should have known that the select[ion] clauses are virtually always

---

[2] The federal complaint alleges: "This case involves plaintiffs, who paid a license fee and royalties, pursuant to various purported license agreements and term sheets, to defendants in order for plaintiff to use certain intellectual property defendants represented were owned by them, only to now find out that defendants either did not own or have authority to license said intellectual property . . . ."

binding and honored by the courts" (internal citation omitted). Finally, he opined: "[I]n my opinion the totality of the acts of the defendants has every appearance to me of a fraudulent scheme in which the plaintiffs were lured into litigation that could <u>never</u> be won . . . " (emphasis added).

Plaintiff Pelinsky also submitted his affidavit describing Stein's alleged misrepresentations. Pelinsky testified that Stein gave him "improper advi[ce], without even acquiring the knowledge he needed to have to give any such advi[ce]" thereby inducing Pelinsky to pay $25,000 in attorney fees to "chas[e] rainbows" in pursuit of a "fictitious cause of action." He averred that defendants never discussed with him the forum in which the federal litigation would be brought. He explained that defendants had Pelinsky sign a document, which defendants represented was required to bring the litigation in a New York Court. Plaintiffs later learned the document was to support their opposition to General Motors' motion to dismiss. Pelinsky explained that once the court dismissed the case for improper venue, defendants failed to notify him until the limitations period had nearly run. When confronted about defendants' dilatory communication about dismissal of the complaint, Stein fabricated the excuse that the district judge had held the decision in chambers. Pelinsky also explained that, during the litigation, he made numerous inquiries into the status of the case, and he was assured that litigation "takes time." According to Pelinsky, when he confronted Stein about why he did not refile in Michigan, Stein responded it does not matter because plaintiffs had superior rights. Stein offered to file copyrights on plaintiffs' behalf for an additional $37,000 legal fee. Plaintiffs also submitted evidence that they paid defendants an initial fee of $7,500 to perform initial

research and draft a complaint. To commence the litigation, plaintiffs agreed to an additional fee that brought the total fees paid defendants to $25,000.

Pelinsky's brother, at the time counsel for plaintiffs, submitted an affirmation corroborating his brother's version of defendants' conduct, recounting his brother's statements and his own personal observations of defendants' conduct during and after the filing of the federal lawsuit.

Supreme Court granted the motion in part and dismissed all but the Judiciary Law § 487 cause of action, concluding there were triable issues of fact as to whether plaintiffs sustained any damage proximately caused either by defendants' alleged deceit or alleged chronic, extreme pattern of legal delinquency. The Appellate Division reversed in so far as appealed from by defendants and granted defendants' motion to dismiss the section 487 cause of action (164 AD3d 635 [2d Dept 2018]). We granted plaintiffs leave to appeal (32 NY3d 913 [2019]).

Plaintiffs' sole contention before us is that their Judiciary Law cause of action was wrongly dismissed on summary judgment because there are triable issues of fact regarding defendants' alleged deceit.[3] In response, defendants argue that, as a matter of law, section 487 does not apply to prelitigation statements and acts, and plaintiffs cannot establish any damages caused by Stein's alleged misconduct. I would reverse the Appellate Division because plaintiffs state a viable cause of action under Judiciary Law § 487 for post-filing

_____

[3] Plaintiffs do not challenge dismissal of their negligence, malpractice and breach of contract causes of action and so I have no occasion to opine on the merits of those theories of liability.

misconduct as there exist triable factual issues whether defendants intended to deceive the court and plaintiffs by knowingly filing and defending a frivolous lawsuit and if so whether plaintiffs suffered damages as a result.

## II.

## Applicable Law

### A. Summary Judgment Standard

To succeed on their motion for summary judgment, defendants had to "make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986], citing Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; see also CPLR 3212 [b]; William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh, 22 NY3d 470, 475-476 [2013]). "Summary judgment is designed to expedite all civil cases by eliminating from the Trial Calendar claims which can properly be resolved as a matter of law" (Andre v Pomeroy, 35 NY2d 361, 364 [1974]; see e.g. Alvord & Swift v Muller Constr. Co., 46 NY2d 276, 280 [1978] [noting that should a plaintiff provide evidence making out a cause of action, summary disposition, as a matter of law, is inappropriate]; Sargoy v Wamboldt, 183 AD2d 763, 765 [2d Dept 1992] [dismissing a cause of action alleging breach of contract because "(t)here is no legal theory of vicarious liability for breach of contract by a noncontracting employee, . . . if (the

employee) was clearly acting only as an agent of a disclosed principal"]; see also 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3212.10 [Note: online treatise]).

"Since [summary judgment] deprives [a] litigant of [their] day in court it is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues" (Andre, 35 NY2d at 364 [citation omitted]). "When deciding such a motion, 'the court's role is limited to issue finding, not issue resolution'" (Dormitory Auth. of the State of N.Y. v Samson Constr. Co., 30 NY3d 704, 717 [2018, Rivera, J., dissenting], quoting Kriz v Schum, 75 NY2d 25, 33 [1989]). "Summary judgment disposition is inappropriate where varying inferences may be drawn, because in those cases it is for the factfinder to weigh the evidence and resolve any issues necessary to a final conclusion" (id.). Instead, the "facts must be viewed in the light most favorable to the non-moving party" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [internal quotation marks omitted]). Only after the moving party makes a prima facie showing does "the burden shift[] to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Alvarez, 68 NY2d at 324). "The moving party's failure to make a prima facie showing of entitlement to summary judgment requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Vega, 18 NY3d at 503 [citation, internal quotation marks and alterations omitted]).[4]

---

[4] The Appellate Division concluded that plaintiffs' allegations in support of their Judiciary Law § 487 cause of action were factually insufficient under CPLR 3016 (b). This was error, as defendants did not challenge the sufficiency of the pleading, choosing instead to file a motion for summary judgment under CPLR 3212, arguing for dismissal based on the

B.  Judiciary Law § 487

Judiciary Law § 487 provides:

> "An attorney or counselor who:
> 1.  Is guilty of any deceit or collusion, or consents to any deceit
>     or collusion, with intent to deceive the court or any party;
>     or,
>
> 2.  Wilfully delays [their] client's suit with a view to [the
>     attorney's] own gain; or, wilfully receives any money or
>     allowance for or on account of any money which [the
>     attorney] has not laid out, or becomes answerable for,
>
> Is guilty of a misdemeanor, and in addition to the punishment
> prescribed therefor by the penal law, [the attorney] forfeits to
> the party injured treble damages, to be recovered in a civil
> action."

Few decisions from this Court address attorney deceit at common law and under

section 487.  In Looff v Lawton (97 Sickels 478, 97 NY 478 [1884]), the Court considered

attorney deceit under Revised Statute § 68, a similarly worded precursor statute to Judiciary

Law § 487, which provided for criminal penalties and a civil action to recover treble

damages.[5]  The Looff plaintiffs were owners of real property who wanted to sell an estate

---

merits.  Judicial review is limited to the adequacy of their papers in support of that motion,
not a motion never filed based on lack of particularity in the pleading and judged under a
different standard (see CPLR 3211 [a] [7], [e], 3016 [b]).  "[CPLR] 3016 (b) provides that
where a cause of action or defense is based upon fraud, 'the circumstances constituting the
wrong shall be stated in detail'" (Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486,
491 [2008]).

[5] 2 R S (1st ed), 287, § 68, provided: "Any counselor attorney or solicitor who shall be
guilty of any deceit or collusion, or shall consent to any deceit or collusion, with intent to
deceive the court or any party, shall be punished by fine or imprisonment, or both, at the

and divide the proceeds (<u>Looff v Lawton</u>, 14 Hun 588 [2d Dept 1878]).  The plaintiffs

alleged their attorney misadvised them that the "best, shortest, and cheapest manner in

which to accomplish [their] intent" was to bring suit in partition (<u>id.</u> at 589).  In support of

their cause of action for attorney deceit, plaintiffs asserted:

> "That said advice and counsel was so given, willfully,
> corruptly and fraudulently, with intent to deceive and defraud
> these plaintiffs, and to induce them to institute and maintain a
> useless and expensive suit, with full knowledge on [counsel's]
> part; that if accepted, believed and followed, the plaintiffs
> would be subjected to great and unnecessary expense to [] the
> defendant's, great benefit, profit and advantage" (<u>id.</u>).

Relying on this advice, plaintiffs commenced a partition action and the property was sold.

Plaintiffs incurred costs and fees associated with the lawsuit, which they sought to recover

under section 68.  In opposition, counsel disputed that his legal advice represented a

misrepresentation of fact sufficient to give rise to a claim.

The trial court dismissed the complaint and denied the motion for a new trial.  The

General Term of Supreme Court reversed, concluding the legislature did not intend to limit

the scope of section 68 to "common law or statutory cheats" because lawyers "should be

liable for acts which would be insufficient to establish a crime or a cause of action against

citizens generally" (<u>id.</u> at 589-590).  The Court explained:

> "An attorney or counsellor who advises ignorant adult owners
> of land that they are not competent to convey it, and thereby
> induces them to employ [counsel] to institute a suit in partition,
> and incur the expense thereof, for the purpose of effecting a
> sale of the lands, gives them erroneous advice, and thereby

---

discretion of the court.  [The counselor] shall also forfeit to the party injured by [their]
deceit or collusion treble damages, to be recovered in a civil action" (<u>Looff</u>, 97 NY at 481).

misleads them to their injury, and if [counsel] is qualified to perform the function of an attorney, [counsel] does it knowingly. To mislead the court or a party is to deceive it; and, if knowingly done, constitutes criminal deceit under the statute cited" (id. at 590).

In short, the court concluded that an attorney was liable for criminal deceit under section 68 for knowingly providing erroneous legal advice, even if the attorney was negligent and lacked a malicious intent.

Our Court reversed, distilling the inquiry to a choice between two possible interpretations of the statutory text:

> "The question then arises whether the section under consideration has reference to the giving of wrong advice, before any action has been commenced, by an attorney to [their] client, when either one of two courses may be pursued, and thereby inducing the client to take that course which is most expensive and injurious, and causing [the client] unnecessarily to incur large expenses, which, if proper advice had been given, might have been avoided, or does it mean deceit and collusion practiced by the attorney in a suit actually pending in court, with the intent to deceive the court or the party?" (Loof, 97 NY at 482).

The Court adopted the latter interpretation, based on the text and the fact that other provisions immediately following section 68 address actions brought or intended to be brought by an attorney (id., citing §§ 69, 70, 71, and 72). The Court concluded that while section 68 does not cover damages for an attorney's wrong advice, by its terms it applies to "a case where the attorney intends to deceive the court or [the] client by collusion with [an] opponent, or by some improper practice" (id. at 482).[6] Accordingly, section 68 did

---

[6] The Court concluded that, because the complaint sufficiently pleaded a breach of duty for which plaintiffs were entitled to recover damages, a new trial should be granted unless

not contemplate "transactions antecedent to the commencement of the action, as the court could have no connection with any such proceeding" (id.). Looff thus made clear that erroneous pre-filing advice did not give rise to a cause of action for attorney deceit under the prior statute.

Fast forward over a century, past the legislature's enactment of Judiciary Law § 487, to this Court's discussion of that statute in Amalfitano v Rosenberg (12 NY3d 8 [2009]). In response to certified questions from the Court of Appeals for the Second Circuit, our Court in Amalfitano clarified that a successful lawsuit for treble damages may be brought under section 487 based on an attempted but unsuccessful deceit (Amalfitano, 12 NY3d at 11).[7] The plaintiffs were prevailing parties in a state fraud action who in turn sued the opposing party's attorney in federal court, alleging a violation of section 487 for that attorney's conduct in the course of the state litigation. According to the plaintiffs, the attorney accused them of orchestrating a fraudulent sale of the family business, all the while knowing his client had forfeited his interest in that business under an assignment agreement (Amalfitano v Rosenberg, 428 F Supp 2d 196 [SD NY 2006], affd 572 F3d 91 [2d Cir 2009]). The plaintiffs alleged, among other things, that the attorney

_____

plaintiffs stipulated to deduct the treble damages from the judgment awarded (Looff, 97 NY at 483).

[7] The Court addressed the following certified questions from the Second Circuit: (1) "Can a successful lawsuit for treble damages brought under [Judiciary] Law § 487 be based on an attempted but unsuccessful deceit?" (Amalfitano, 12 NY3d at 11); and (2) "In the course of such a lawsuit, may the costs of defending litigation instituted by a complaint containing a material misrepresentation of fact be treated as the proximate result of the misrepresentation if the court upon which the deceit was attempted at no time acted on the belief that the misrepresentation was true?" (id. at 14-15).

> "signed the verified complaint, thereby certifying that he had determined, after reasonable inquiry, that the factual allegations in the complaint were true and that the causes of action pleaded were not completely without merit in law. In fact, defendant [attorney] knew that there was no competent evidence to support any of the material elements of any of the causes of action contained in the complaint."

The court found that, "[a]t the very least," those actions undertaken by the attorney which "directly conflicted with his knowledge of the validity of the [assignment agreement] constitute[d] violations of § 487 (Amalfitano, 428 F Supp 2d at 208). Our Court concluded that the defendant's alleged unsuccessful representation did not foreclose plaintiffs' subsequent statutory action for attorney deceit because "recovery of treble damages under Judiciary Law § 487 does not depend upon the court's belief in a material misrepresentation of fact in a complaint" (Amalfitano, 12 NY3d at 15).

Based on a historical overview of the statutory origins of Judiciary Law § 487, the Court explained that our statute "does not derive from common-law fraud" but "descends from [chapter 29 of] the first Statute of Westminster, which was adopted by the Parliament summoned by King Edward I of England in 1275" (id. at 12). Over the centuries, beginning in 1787, our state legislature enacted "strikingly similar language and added an award of treble damages," which then led to the eventual codification in the Penal Code of 1881 of a misdemeanor crime and the civil forfeiture remedy (id.).

In explaining the evolution of the legislative enactments in the Penal Law that led to the passage of Judiciary Law § 487 of 1965, the Court quoted the General Term's opinion in Looff that the existence of a common law action for fraud made unnecessary a statute to punish a lawyer's deceit, so the legislature must have intended liability for

something short of a common law claim (id. at 13-14).[8]   As Amalfitano noted, the legislature subsequently recodified the Penal Law on attorney deceit in another section and then finally transferred the prohibition to Judiciary Law § 487 (id. at 14).

This history confirms that Judiciary Law 487 "is a unique statute of ancient origin in the criminal law of England," and is comparable to criminal law, not civil torts (id.). Therefore, section 487, likened to attempts punishable under the criminal law, applies to unsuccessful deceits. To hold otherwise "run[s] counter to the statute's evident intent to enforce an attorney's special obligation to protect the integrity of the courts and foster their truth-seeking function" (id.). It is then a simple bit of logic to understand that "[w]hen a party commences an action grounded in a material misrepresentation of fact, the opposing party is obligated to defend or default and necessarily incurs legal expenses," and since "a lawsuit could not have gone forward in the absence of the material misrepresentation," a party's legal expenses in defending against the action may be treated as proximately resulting from the misrepresentation, exposing the attorney to liability under section 487 (id.).

Five years later, in Melcher, we determined that a claim for attorney deceit under Judiciary Law § 487 is subject to a six-year statute of limitations (23 NY3d at 15). Drawing on Amalfitano's comprehensive discussion of section 487, we reaffirmed that the statutory cause of action has origins distinct from common-law fraud. Specifically, "a cause of

---

[8] A cause of action sounding in common law fraud requires "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" (Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009], citing Ross v Louise Wise Servs., Inc., 8 NY3d 478, 488 [2007]).

action for attorney deceit [] existed as part of New York's common law before the first New York statute governing attorney deceit was enacted in 1787. The 1787 statute enhanced the penalties for attorney deceit by adding an award for treble damages, but did not create the cause of action" (id. [internal citation omitted]). Therefore, because Judiciary Law § 487 does no more than provide additional remedies for a subclass of fraud, it is not subject to the three-year statute of limitations under CPLR 214 (2) that governs an action "created or imposed by statute" (id. at 13), but instead falls within the default CPLR 213 (1) six-year statute of limitations for all actions not otherwise covered by a specific limitations provision.

These three decisions stand for several propositions that inform the analysis here. First, an action for attorney deceit existed under New York's common law and predates the first state statute from 1787, which itself originated in English law and led to the enactment of Judiciary Law § 487 (Melcher, 23 NY3d at 15; Amalfitano, 12 NY3d at 12). Second, section 487, like its predecessors, codifies attorney deceit as a crime and provides for civil treble damages (Amalfitano, 12 NY3d at 13-14). Third, section 487 does not derive from or supplant common-law fraud, which applies to a broad spectrum of deceitful conduct, including pre-litigation deceit by an attorney, such as inducing a client to retain the attorney in matters the attorney knows are wholly without merit for the sole purpose of securing payment from the client (see Melcher, 23 NY3d at 14-15). Fourth, unlike common-law fraud, section 487 is limited to attorney deceit on the court or a party in the course of litigation (Amalfitano, 12 NY3d at 15; Looff, 97 NY at 482).

Applying these propositions here leads to the logical conclusion that Judiciary Law

§ 487 encompasses attorney deceit in the form of filing and pursing a knowing frivolous

lawsuit. In Amalfitano, for example, after a four-day bench trial, the federal district court

found the defendant attorney was liable under section 487. "[M]indful [] that not all

unethical or sanctionable conduct necessarily violates [section] 487," the court found that,

"[a]t the very least," the actions undertaken by the attorney which "directly conflicted with

his knowledge of the validity of the [assignment agreement] constitute[d] violations of §

487 (Amalfitano, 428 F Supp 2d at 208).[9]

---

[9] An interpretation of Judiciary Law § 487 that prohibits the filing of knowingly frivolous lawsuits is also consistent with the Statue of Westminster's two central concerns of official misconduct and "excessive and specious litigation" that "coalesced" in Chapter 29's prohibition of deceit or collusion in the King's Court (Jonathan Rose, The Legal Profession in Medieval England, 48 Syracuse L Rev 1, 55-56 [1998]). Commentators commonly gave the statutory language a broad birth sufficient to punish "false pleading[s]" (id. at 58-59). Sir Edward Coke, one of England's most renowned jurists and commentators, wrote that chapter 29 applied to defective or unjustified litigation and other forms of misfeasance (Edward Thomas Coke, Second Part of the Institutes of the Laws of England 215 [1797]; see e.g. id. [noting that the Statute would apply when a party "bring[s] a praecipe against a poor man, knowing that he hath nothing in the land, of purpose to get the possession of the land against the tenant who is in possession."]; see generally Allen D. Boyer, Sir Edward Coke and the Elizabethan Age (2003); Anthony R. Enriquez, Structural Due Process in Immigration Detention, 21 CUNY L Rev 35, 41 (2017) (noting that Coke's views were a "a chief source of early American constitutionalism"), quoting Nathan S. Chapman & Michael W. McConnell, Due Process as Separation of Powers, 121 YALE LJ 1672, 1684 (2012); Allen Dillard Boyer, "Understanding, Authority, and Will": Sir Edward Coke and the Elizabethan Origins of Judicial Review, 39 BC L Rev 43, 43 (1997) (describing Coke as a "poet of judicial wisdom and legal craftsmanship"). For example, in a case from eighteenth century England, the court explained that when a cause of action is brought as a "pretense" to effectuate some other purpose, "the action is brought in deceit of the Court," notwithstanding the merit of the underlying proceeding (Coxe and Phillips, [1736] 95 Eng Rep 152 [KB] 153). One species of "fictitious action" (id.) was a "fob action," entitled this because it was "'preparative' for any real litigation upon the question that might follow it, but [also] because the large counsel fees which [] counsel 'fobbed' were paid them by the opposite party" (Daniel B. Tallmadge, An Argument Against the Constitutionality of the

III.

Plaintiffs' Judiciary Law § 487 Cause of Action

In order to establish entitlement to summary judgment as a matter of law, defendants had to show conclusively by admissible evidence that there is no triable issue of fact as to whether defendants practiced a deceit on the court or a party to the federal action, so that plaintiffs' Judiciary Law § 487 "cause of action [] has no merit" (CPLR 3212 [b]). Defendants argue that summary dismissal was appropriately granted because: (1) the alleged wrongdoing occurred prelitigation, which is not actionable under section 487; and (2) the statutory treble damages recovery requires proof of a chronic, extreme pattern of legal delinquency, which is wholly lacking on the facts as alleged. Defendants were not entitled to summary judgment because the complaint, which must be liberally construed, and plaintiffs' submission in opposition to summary judgment established triable issues regarding whether defendants committed deceit on the court and plaintiffs by pursuing an alleged knowing frivolous lawsuit solely as a pretext to charge legal fees. Moreover, by its plain text, section 487 applies to even a single act of deceit, so a pattern of misconduct is not a necessary element of the cause of action.

---

Free Banking Law, of the State of New York 17-18 [1845]). In another seventeenth century case, Lord Chief Justice John Holt—whose name was "held in reverence by English freemen; for he was a sound judge" (Yates v Lansing, 5 Johns 282, 298 [Sup Ct 1810], affd, 9 Johns 395 [NY 1811] [emphasis omitted])—directed a sharp inquiry at counsel: "Do you bring fob actions to learn the opinion of the court?" (Brewster v Kitchin, Roger Comberbach, Reports of Several Cases Argued and Adjudged in the Court of King's Bench at Westminster, 1658-1695, at 425 [1724]).

Contrary to the defendants' view, adopted by the majority (majority op at 1), plaintiffs' complaint is not limited to mere prelitigation conduct, but rather asserts that defendants made initial and continued false representations to the court about the legal and factual basis for the federal action in the federal complaint and plaintiffs opposition to defendants motion to dismiss (see discussion supra Part I.A.). Viewed in the light most favorable to plaintiffs as the non-moving party (Vega, 18 NY3d at 503), plaintiffs' complaint asserts that the federal lawsuit against GM had no legal basis and was "grounded in a material misrepresentation of fact" (Amalfitano, 12 NY3d at 15)—i.e., that plaintiffs had superior rights and thus should prevail. But for defendants' material misrepresentations with respect to plaintiffs' claims, the federal lawsuit "could not have gone forward" (id.; see e.g. Amalfitano, 428 F Supp 2d at 208 [noting that the attorney had filed a complaint challenging the validity of the assignment agreement and alleging, in part, that his client was still a partner in the family businesses, despite the fact that the attorney knew that his client's partnership interest had earlier been terminated by that same assignment agreement]).

Plaintiffs' factual assertions regarding defendants' prelitigation conduct provide context to these allegations. The documents in opposition to summary judgment, including statements by Pelinsky and the intellectual property attorney, provide further support for a finding that defendants' filing and litigation posture evinced an orchestrated scheme to charge legal fees for an action that the attorneys knew to be frivolous. Indeed, defendants do not dispute that they represented plaintiffs and that plaintiffs paid legal fees for filing and defending a lawsuit; they merely claim they did nothing wrong and thus did not act

with the requisite intent.  However, as a general matter, deceitful intent is a question of fact, not appropriate for resolution on summary judgment (see e.g. Ruiz v McKenna, 40 NY2d 815, 816 [1976]; Dygert v Remerschnider, 32 Tiffany 629, 636, 32 NY 629 [1865]; ACA Fin. Guar. Corp. v Goldman, Sachs & Co., 131 AD3d 427, 428 [1st Dept 2015]; Brown v Lockwood, 76 AD2d 721, 732 [2d Dept 1980]).  Defendants also took the position below that plaintiffs could not have prevailed in the federal action because the licensing agreement's no-challenge clause foreclosed the litigation—information obvious from the face of the agreement, and which all the more supports plaintiffs' allegation that defendants' actions were fraudulent from the beginning.

The majority misses the mark by concluding that there is no meaningful distinction between attorney conduct that leads to an unnecessary lawsuit like that in Looff and a frivolous lawsuit, like that alleged here (majority op at 5).  The plaintiffs' claim in Looff failed because the attorney's prelitigation advice resulted in the filing of an unnecessary partition claim, but it did not contain any fraudulent statement.  In other words, the attorney did not seek to deceive the court about the merits of the pending action because there was nothing fraudulent about the partition action he filed; the wrong the plaintiffs were seeking to rectify in Looff was the attorney's assurance that filing the legal action would be the most expedient and cost-effective way to meet their ultimate goal.  In contrast, an attorney who files a frivolous lawsuit with full knowledge that the action is groundless and nevertheless intends to deceive the court as to the viability of the claims asserted therein to achieve the nonlegitimate end of solely charging legal fees, commits a deceit that imperils the integrity of the courts and undermines their truth-seeking function.  I see an obvious,

meaningful distinction between filing an action that an attorney believes will achieve a client's intended goal, based on the law and facts as the attorney understands them, and an action filed by an attorney who knows the claims lack any arguable foundation in law or fact and proceeds with the litigation solely to cheat their client out of legal fees, oblivious to the impact on the court or the party sued.

Applying our summary judgment standard here, assuming without deciding that defendants met their prima facie burden, plaintiffs presented evidence in opposition to defendants' motion sufficient to show a viable cause of action under Judiciary Law § 487, and triable issues of facts remain as to whether defendants intended to practice a deceit on the court or plaintiffs, proximately causing plaintiffs damages in the form of unwarranted legal fees (see Amalfitano, 12 NY3d at 15; Looff, 97 NY at 482).

IV.

Judiciary Law § 487 Does Not Target Good Faith Lawyering

The majority relies on a general statement from a case not involving Judiciary Law § 487 to argue that we should not read the statute beyond the fair scope of its mandate (majority op at 5). I agree, but that does not affect the analysis on this appeal. Plaintiffs claim their attorney knowingly pursued a meritless action solely to collect fees, allegedly made possible by defendants' misrepresentations to the court about the facts and law underlying plaintiffs' federal claims. Of course, if the majority means that we cannot read section 487 to encompass a cause of action based on nothing more than a client's disappointment with the results of an attorney's efforts, I agree wholeheartedly. Such an

interpretation would exceed the legislative focus on attorney deceit in a pending suit, as opposed to responsible but ultimately unsuccessful representation.

Again, that is not a reason to invoke the drastic remedy of summary judgment under the circumstances presented by this appeal. Plaintiffs may be dissatisfied clients (a quite reasonable and rational response if their allegations are true), but they are not dissatisfied because plaintiffs believe defendants filed a colorable action that failed, as the Appellate Division suggested. Rather, plaintiffs are dissatisfied because, according to plaintiffs, counsel schemed to induce them to pay legal fees for pursuing a meritless lawsuit that counsel knew should never have been filed. The latter is actionable under section 487.

This interpretation of section 487 and our precedents would not subject attorneys to liability for "poor lawyering, negligent legal research or the giving of questionable legal advice" (majority op at 6 n 2). An attorney is not subject to liability under Judiciary Law § 487 merely because their client fails to prevail in litigation. Otherwise, there would be a flood of meritless actions by dissatisfied clients since in our legal a system there is always a "losing" party. As the Court first stated in Amalfitano, the legislature codified the misdemeanor crime and civil treble damages remedy for attorney deceit because that specific type of conduct is particularly harmful to our judicial system (Amalfitano, 12 NY3d at 14; see also Melcher, 23 NY3d at 15). The legislature's intent "to enforce an attorney's special obligation to protect the integrity of the courts and foster their truth-seeking function" does not include penalizing an attorney for professionally competent, albeit unsuccessful, advocacy. Indeed, an attorney has a professional duty and ethical obligation, within the bounds of the law, to aggressively advocate colorable claims on

behalf of their client (<u>see</u> Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.3 Comment [1] [Note: citation to rule and commentary]).[10]   However, the legislature, concerned with "enforc[ing] an attorney's special obligation to protect the integrity of the courts and foster[ing] their truth seeking function" (<u>id.</u>), could not have intended to exclude from the statute's coverage an attorney's intentional filing of a frivolous lawsuit for the sole purpose of obtaining unwarranted legal fees.[11]

Defendants were not entitled to summary judgment dismissal of plaintiffs' cause of action for alleged violation of Judiciary Law § 487.  I would reverse the Appellate Division and reinstate the claim.

---

[10] Despite the majority's suggestion to the contrary, I agree that Judiciary Law § 487 was not intended "to curtail attorneys' expression of views concerning what the law is or should be" (majority op at 7 n 3).  Indeed, an attorney has a professional duty to make colorable arguments on behalf of the client for expanding or overturning existing law and "take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor"  (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.3 Comment [1]). What an attorney cannot do without running afoul of professional standards and section 487 is make an argument before a court knowing that the position advocated is wholly baseless, interposed only to profit off of the filing, without consideration as to the eventual ruling from the court.  That an attorney may be subject to other consequences, such as a misconduct proceeding and a malpractice action, for knowingly filing and defending frivolous matters for profit is also true for the limited types of conduct the majority acknowledges falls within section 487, and only confirms society's interest in imposing a range of severe sanctions for attorney deceit.
[11] Given that few attorneys would breach their oath by such deceit, we need not worry that courts will indiscriminately hold attorneys liable for informed assertive lawyering rather than actual fraud.  In any case, even though the majority has foreclosed a client from seeking treble damages under section 487 in a case where an attorney files a frivolous lawsuit, the same client may still sue for common law fraud (<u>see</u> <u>supra</u> note 8).

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed, with costs. Opinion by Chief Judge DiFiore. Judges Stein, Fahey, Garcia, Wilson and Feinman concur. Judge Rivera dissents in an opinion.

Decided March 31, 2020

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*