Iberdrola Energy Projects v Oaktree Capital Mgt. L.P. (2024 NY Slip Op 03798)

Iberdrola Energy Projects v Oaktree Capital Mgt. L.P.

2024 NY Slip Op 03798

Decided on July 11, 2024

Appellate Division, First Department

HIGGITT, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: July 11, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter H. Moulton
Barbara R. Kapnick Saliann Scarpulla John R. Higgitt Kelly O'Neill Levy

Index No. 652514/21 Appeal No. 1438-1439-1440 Case No. 2022-02105, 2023-00431, 2023-00437 

[*1]Iberdrola Energy Projects, Plaintiff-Appellant,
v
Oaktree Capital Management L.P. et al., Defendants-Respondents.

Plaintiff appeals from a judgment of the Supreme Court, New York County (Jennifer G. Schecter, J.), entered January 19, 2023, dismissing the amended complaint with prejudice. Plaintiff also appeals from an order and supplemental order, same court and Justice, entered on or about April 1, 2022 and December 21, 2022, which granted defendants' motion to dismiss the complaint.

Steptoe LLP, New York (Robert W. Mockler, Joseph M. Sanderson, Lillian Khoury and Maria Esperanza Ortiz, of counsel), and Steptoe LLP, Los Angeles, CA (Thomas Watson of the Bar of the State of California, admitted pro hac vice, of counsel), for appellant.
King & Spalding LLP, New York (Richard T. Marooney and Alvin Lee, of counsel), and King & Spalding LLP, Washington, DC (Ashley C. Parrish of the Bar of the District of Columbia, admitted pro hac vice, of counsel), for respondents.

HIGGITT, J. 

Plaintiff appeals from a judgment of the Supreme Court, New York County (Jennifer G. Schecter, J.), entered January 19, 2023, dismissing the amended complaint with prejudice. Plaintiff also appeals from an order and supplemental order, same court and Justice, entered on or about April 1, 2022 and December 21, 2022, which granted defendants' motion to dismiss the complaint.
Steptoe LLP, New York (Robert W. Mockler, Joseph M. Sanderson, Lillian Khoury and Maria Esperanza Ortiz, of counsel), and Steptoe LLP, Los Angeles, CA (Thomas Watson of the Bar of the State of California, admitted pro hac vice, of counsel), for appellant.
King & Spalding LLP, New York (Richard T. Marooney and Alvin Lee, of counsel), and King & Spalding LLP, Washington, DC (Ashley C. Parrish of the Bar of the District of Columbia, admitted pro hac vice, of counsel), for respondents.
HIGGITT, J.
On this appeal we are asked to ascertain the scope of a nonrecourse provision in a contract between two sophisticated commercial actors relating to the construction of a power plant, and, relatedly, the extent to which certain nonparties to the contract (defendants here) are insulated from liability by virtue of that provision. We agree with the motion court that the nonrecourse provision bars the majority of plaintiff's claims against defendants, and that plaintiff's fraud claim, which would otherwise have survived the nonrecourse provision, was not sufficiently pleaded.
I.
Approximately 10 years ago, defendants wanted to replace a coal power plant in Salem, Massachusetts with a gas generation power plant. Defendants created a special-purpose entity, nonparty Footprint Power Salem Harbor Development LP, to serve as the company charged with constructing the new plant. Defendants owned, controlled, and managed Footprint, and were Footprint's majority and controlling equity holders. Moreover, the majority of Footprint's board of directors and officers were defendants' employees.
In December 2014, Footprint retained plaintiff to be the project's engineering, procurement, and construction contractor. The contract between plaintiff and Footprint called for plaintiff to provide services, materials, and labor in exchange for the contract price. The contract also contemplated additional compensation for change orders. Footprint was permitted to terminate the contract for convenience or for a material breach by plaintiff. In the event of termination for the former, Footprint would incur substantial payment obligations; termination for the latter would not. Under the contract, plaintiff was required to post a standby letter of credit in the amount of 20% of the contract price (approximately $140 million) as security for plaintiff's performance. Footprint was permitted to draw on the letter of credit only "upon any Contractor's breach or failure to perform, when and as required, any of its material obligations under th[e] Contract with five Business Days prior written notice to Contractor[*2]."
The contract contained a nonrecourse provision that provided that,
"Owner's [i.e., Footprint's] obligations hereunder are intended to be the obligations of Owner and of the corporation which is the sole general partner of Owner only and no recourse for any obligation of Owner hereunder, or for any claim based thereon or otherwise in respect thereof, shall be had against any incorporator, shareholder, officer or director or Affiliate, as such, past, present or future of such corporate general partner or any other subsidiary or Affiliate of any such direct or indirect parent corporation or any incorporator, shareholder, officer or director, as such, past, present or future, of any such parent or other subsidiary or Affiliate."
The contract required plaintiff and Footprint to submit to binding arbitration any dispute between those parties arising out of, relating to, or in connection with the contract.
A choice-of-law provision dictated that the contract was governed by and construed in accordance with New York law.
The project began in 2015 but relations between Footprint and plaintiff were troubled, and delays and cost overruns ensued. This situation apparently was caused by, among other things, shortcomings in plaintiff's performance of its contractual responsibilities, and Footprint's management approach and sharp business practices. Plaintiff's work on the project did not progress in the manner envisioned by the contract; the guaranteed substantial completion date of May 31, 2017 came and went without an operational facility. For several months, the parties negotiated in an effort to resolve their disagreements (such as plaintiff's failure to achieve substantial completion by May 31, 2017 and the amount, if any, plaintiff was owed on various change-order work) and achieve completion of the project. Plaintiff would come to characterize these negotiations as a ruse by defendants to keep plaintiff working on the project, while defendants have maintained that they participated in the negotiations in good faith.
On April 15, 2018, at a time when the project was 98% complete, Footprint gave plaintiff notice of termination for cause, citing, among other things, plaintiff's failure to achieve substantial completion by the required date. Simultaneously, Footprint gave plaintiff notice of Footprint's intent to draw on the letter of credit. Later, Footprint drew the $140 million afforded by the letter of credit. A replacement contractor was retained by Footprint and the modest remaining work was completed.
Plaintiff initiated an arbitration proceeding against Footprint, claiming that Footprint breached the contract, engaged in tortious conduct, and violated the Massachusetts Unfair Trade Practice Act. Plaintiff sought $700 million in damages. Footprint appeared in the arbitration proceeding and asserted counterclaims. Following a thorough hearing, the arbitration panel determined, among other things, that Footprint lacked cause to terminate the [*3]contract and that it terminated the contract as a pretense to draw on the letter of credit. After offsetting plaintiff's damages with those of Footprint, the panel issued a final award in plaintiff's favor of $236,404,377. That award was confirmed by Supreme Court in January 2022.
In the wake of the adverse arbitration award, Footprint filed for bankruptcy. This diminished the possibility that plaintiff would realize a recovery on the award.
II.
In April 2021, while the arbitration proceeding was still pending, plaintiff commenced this action seeking damages against defendants. In its amended complaint, plaintiff asserted causes of action for tortious interference with contract, fraud, unjust enrichment, and violations of Massachusetts's deceptive trade practices statute.[FN1] The crux of plaintiff's claims is that, as plaintiff's work on the project progressed, defendants were concerned that the projected revenues of the gas generation plant were diminishing; defendants did not want to make significant, additional investments in the project; the confluence of diminishing projected revenues and increasing completion costs caused defendants to face losses on their investment; and, to avoid that eventuality, defendants devised a scheme to force plaintiff, through the funds available under the letter of credit, to pay for completion of the work. According to plaintiff, in the months leading up to their termination of the contract, defendants lied to plaintiff to convince it to continue working on the project until it was approximately 98% complete; defendants then encouraged Footprint to pretextually terminate the contract, ostensibly for a material breach by plaintiff, to access the $140 million available under the letter of credit; and, lastly, defendants used the draw from the letter of credit to pay a third party to complete the remaining 2% of the work.
Defendants moved to dismiss the complaint under CPLR 3211(a), relying principally on the nonrecourse provision. Plaintiff opposed the motion and informally sought leave to replead or amend the amended complaint.
Supreme Court granted the motion, denied (sub silencio) plaintiff leave to replead or amend, and dismissed the amended complaint with prejudice. The court observed that plaintiff was seeking to hold Footprint's principals liable for its conduct because it would not be able to satisfy the arbitration award, and concluded that the nonrecourse provision barred all of plaintiff's claims except for fraud. The court found, however, that plaintiff failed to adequately plead the element of detrimental reliance necessary to sustain a cause of action for fraud.
After the court issued a supplemental order, judgment was entered dismissing the complaint with prejudice.
III.
On appeal, plaintiff argues that the nonrecourse provision bars contractual causes of action, not tort claims. Pointing to the particular language of the nonrecourse provision and caselaw addressing the scope and enforceability [*4]of nonrecourse provisions generally, plaintiff maintains that its tortious interference with contract, fraud, and statutory claims survive the nonrecourse provision. Plaintiff notes, too, that, by virtue of public policy, its fraud claim is not subject to the nonrecourse provision. Plaintiff maintains that the "as such" language in section 18.16 means that incorporators, shareholders, officers, directors and affiliates — like defendants — are insulated from status-based claims against them, not torts they commit in their individual capacities. Additionally, plaintiff contends that the no-third-party-beneficiaries clause establishes that defendants cannot enforce the nonrecourse provision because they have no rights under the contract.
Regarding the sufficiency of its pleading, plaintiff maintains that it adequately pleaded justifiable reliance on its fraud claim in the form of forbearance by alleging that it had the right to suspend performance and seek remedies under the contract once Footprint stopped paying it, but continued working and forbore from exercising contractual remedies because of defendants' misrepresentations (e.g., defendants' statements to plaintiff to convince it to continue working on the project notwithstanding that it was not getting paid). In the event we disagree with that point, plaintiff asks for leave to replead its fraud claim.
Defendants argue that plaintiff's claims for tortious interference with contract, negligent misrepresentation, and unjust enrichment, as well as those based on Massachusetts' statutory law, are covered (and therefore barred) by the nonrecourse provision, because they are "based on" or "in respect" of the contract. Defendants highlight that the contract not only supplies the necessary context for the claims plaintiff has pleaded, but also the essential predicate for all of the causes of action. Should we agree with plaintiff's interpretation of section 18.16, insist defendants, we would be nullifying that provision. Defendants disagree with plaintiff's reading of the phrase "as such," and maintain that those words mean that, for the nonrecourse provision to apply, the defendant's status as a director, officer, shareholder or affiliate must be relevant to the claim, i.e., the claim must arise from actions taken in the listed role. Here, defendants engaged in their allegedly tortious conduct in their roles as equity owners of Footprint (or affiliates thereof), or directors of Footprint. Defendants claim that the no-third-party-beneficiaries clause has no bearing on the nonrecourse provision because defendants are not seeking to enforce any right under the contract; rather, they are defending themselves from civil liability by observing that the contract limits plaintiff's ability to sue them.
Defendants assert that the fraud claim — which, they recognize, is not barred by the nonrecourse provision — is nothing more that a repackaged contractual cause of action. Defendants also assert that plaintiff [*5]failed to adequately allege detrimental reliance on defendants' purported misrepresentations because plaintiff was already contractually obligated to perform the unfinished work, and plaintiff did not relinquish any rights under the contract. Lastly, defendants contend that Supreme Court properly denied, sub silencio, plaintiff's request for leave to replead or amend because the new allegations offered in the proposed amended complaint did not remedy the deficiencies in the original complaint.
IV.
A.
Freedom of contract, particularly between sophisticated commercial actors, dealing at arm's length, is an important right (see Matter of Part 60 Put-Back Litig., 36 NY3d 342, 355 [2020]), and, "[a]bsent some violation of law or transgression of a strong public policy, the parties to a [commercial] contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to a third party" (Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62, 67-68 [1978]).
A contract is to be construed in accordance with the intent of the parties, and the best evidence of their intent is what they express in their written contract (Donohue v Cuomo, 38 NY3d 1, 12 [2022]; Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). Clear, complete, and unambiguous contractual terms are to be enforced according to their plain meaning (see Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017]; Greenfield, 98 NY2d at 569), and every aspect of the contract must be accorded meaning and effect (see Nomura Home Equity Loan, Inc., Series 2006-FM2, 30 NY3d at 581; see also Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 39 [2018]). Where a contract was negotiated and relied upon by experienced, sophisticated business actors represented by counsel, the parties are entitled to the commercial certainty that flows from the enforcement of the plain meaning of their unambiguous agreement (see Skanska USA Bldg. Inc. v Atlantic Yards B2 Owner, LLC, 31 NY3d 1002, 1006 [2018]; see also Donohue, 38 NY3d at 12).
Contrary to plaintiff's contention, the nonrecourse provision is not limited to breach of contract claims. That provision is as broad as it is clear: no liability could be imposed upon various individuals and entities for "any claim based [on the contract] or otherwise in respect thereof." Elsewhere, the contract defines "claims" as "all liability (including strict liability), claims, suits, demands, penalties, actions, [and] causes of action . . . ." Giving the commercial contractual language its plain meaning and effect, defendants [FN2] are exculpated from any breach of contract liability and any other claims related to or in connection with the contract (see Cambridge Dictionary, defining "in respect of" as "in connection with" [https://dictionary.cambridge.org/ dictionary/english/in-respect-of]; see also Merriam-Webster Dictionary, finding "in respect of" synonymous with "with respect to" and "concerning" [https[*6]://www.merriam-webster.com/dictionary/respect]. Plaintiff's causes of action for tortious interference with contract, unjust enrichment, and violations of Massachusetts's deceptive trade practices statute are all hinged or predicated on conduct taken under or in contravention of the contract. Thus, those causes of action all relate to or are connected with the contract and are therefore barred by the nonrecourse provision.
Had plaintiff wanted to limit the nonrecourse provision to breach of contract claims, it should not have agreed to such a sweeping nonrecourse provision. Plaintiff could have insisted that the nonrecourse provision state expressly that it was limited to breach of contract claims, or that it did not apply to tort claims. Instead of insisting on a narrow nonrecourse provision, plaintiff assented to a broad one (cf. Bank of N.Y. v Berisford Intl., 190 AD2d 622, 623 [1st Dept 1993] ["as the causes of action herein concern tort claims and seek tort damages, the 'nonrecourse' language of the notes and mortgage are not relevant to these claims" (emphasis added)]).
Plaintiff, a sophisticated commercial actor, knew that it was entering into a significant contractual undertaking with a special-purpose entity, and the contract provided for a specific dispute-resolution mechanism — arbitration — that carried with it a risk that the special-purpose entity would not be able to satisfy an ensuing award. Plaintiff could have bargained for protections to avoid or mitigate losses occasioned by the conduct of a judgment-proof special-purpose entity (e.g., conditions on Footprint's ability to draw on the letter of credit, a payment guaranty from one or more of defendants, a narrow nonrecourse provision), but it chose to enter into the contract as written (see Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 695 [1995]). We cannot provide rough justice to plaintiff by dint of distorting the plain meaning of the contract to relieve plaintiff of the consequences of its contractual arrangement (see Nomura Home Equity Loan, Inc., Series 2006-FM2, 30 NY3d at 581; Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004]). Similarly, we cannot, under the guise of contractual interpretation, disturb the clear, detailed allocation-of-risk-of-economic-loss scheme agreed upon by the parties (see Matter of Part 60 Put-Back Litig., 36 NY3d at 352). Ultimately, plaintiff got the benefit of its bargain: arbitration on its cognizable claims against Footprint, which proceeding yielded a sizable award that was converted to a judgment.[FN3]
We also disagree with plaintiff's reading of the phrase "as such" in the nonrecourse provision, which plaintiff views as insulating incorporators, shareholders, officers, directors, and affiliates from status-based claims only, not torts they commit in their individual capacities. In light of the otherwise broad language of the nonrecourse provision, the plain, sensible reading of "as such" (and [*7]the one that gives the phrase meaningful effect) is the one proposed by defendants: that a defendant's status as an incorporator, shareholder, officer, director, or affiliate must be relevant to the claim asserted against the defendant in order for the claim to be encompassed by the nonrecourse provision. Defendants' reading of "as such" also comports with the evident purpose of the nonrecourse provision, which is to provide Footprint and other covered actors related to it (including defendants) expansive freedom from liability. Plaintiff points to no persuasive authority supporting its interpretation of the "as such" language. Moreover, plaintiff was free to bargain for a contractual definition of that phrase, but it did not do so.
The relevance of defendants' respective statuses to the claims asserted against them is manifest. Plaintiff alleged that defendants engaged in the allegedly tortious conduct in their respective corporate roles.
Plaintiff gives too much weight to the contract's no-third-party-beneficiary provision. While that provision makes plain that no one other than the parties to the contract has any rights under the contract, defendants are not claiming third-party beneficiary status, i.e., they are not asserting any contractual claim (see Dormitory Auth. of the State of N.Y. v Samson Constr. Co., 30 NY3d 704, 710 [2018]). Instead, defendants, in response to plaintiff's claims against them, are observing that those claims are barred by the nonrecourse provision.[FN4]
Ultimately, in light of the contractual obligation as a whole and the intention of the parties manifested by that obligation (see Cortlandt St. Recovery Corp., 31 NY3d at 39), Supreme Court properly determined that the nonrecourse provision barred plaintiff's causes of action against defendants for tortious interference with contract, unjust enrichment, and violations of Massachusetts's deceptive trade practices statute.
B.
With respect to its fraud claim, plaintiff asserts that it adequately pleaded justifiable reliance because it had the right to suspend performance and seek remedies under the contract once Footprint stopped paying it, but it continued working because of defendants' misleading statements designed to keep plaintiff working on the project. Defendants argue that plaintiff failed to adequately allege detrimental reliance on defendants' purported misrepresentations because plaintiff was already contractually obligated to perform the unfinished work. We agree with defendants on this point.
Plaintiff was obligated to perform all design, engineering, and construction work, and achieve substantial completion of the project by May 31, 2017. And plaintiff was required to continue to perform notwithstanding that Footprint stopped paying plaintiff disputed amounts in 2018. The parties contemplated that they may have disagreements during the project, and the contract addressed that contingency. Section 17.4 of the contract provided that
"Notwithstanding the existence [*8]of any Dispute hereunder, the Parties will continue to perform their respective obligations under this Contract unless the Parties otherwise mutually agree in writing. If, during the pendency of a Dispute, the Work is in progress, Owner's Authorized Representative will give such instructions in writing as, in his or her opinion, are necessary for the proper performance of the Work and to prevent delays pending settlement of the Dispute. Contractor will carry out such instructions and will proceed with the execution of the Work for so long as the Owner continues to pay undisputed amounts that are due and payable hereunder and the Contract has not been terminated, it being understood that in so doing Contractor, if it gives Owner a written notice before carrying out such Work that Contractor is doing so under protest, is not jeopardizing any claim it may have under this Contract and is not in any way renouncing or waiving any rights or recourse it may have under this Contract. If Contractor does not diligently prosecute the Work or any portion of it, Contractor will be liable for all damage suffered by Owner. If there is a conflict between this Section 17.4 and Section 13.5, this Section 17.4 shall control."
While plaintiff asserts that defendants' misrepresentations caused it to forbear from exercising its right to terminate the contract under section 13.5, that section is clearly subordinated to section 17.4. Section 17.4, coupled with the no-oral-modifications provision (section 18.7), preclude plaintiff from claiming any justifiable reliance on defendants' alleged misrepresentations.
Moreover, plaintiff did not relinquish any right it otherwise enjoyed as a result of defendants' alleged fraudulent misrepresentations. To the contrary, plaintiff pursued the remedy afforded it by the contract: arbitration against Footprint.
Ultimately, the crux of the fraud claim in the amended complaint is that defendants fraudulently induced plaintiff to continue performing under the contract, and that is an insufficient basis on which to rest such a claim (see Megaris Furs v Gimbel Bros., 172 AD2d 209, 212 [1st Dept 1991] ["Simply put, one cannot be induced to tender a performance which is required as a part of a preexisting contractual obligation"; that is to say, "a plaintiff cannot claim to have been defrauded into doing what it already was legally bound to do" (internal quotation marks omitted)]).
C.
Supreme Court — understandably — analyzed the amended complaint against which defendants moved; it did not scrutinize the proposed second amended complaint that plaintiff offered in opposition to the motion to dismiss.[FN5] Plaintiff contends that the proposed second amended complaint pleads a fraud claim based on misrepresentations that are collateral to the contract. For instance, plaintiff asserted that defendants' misrepresentations caused plaintiff to "add[] and maintain[] additional resources [for the project] that would have otherwise been unnecessary [*9]or not required." Because Supreme Court did not pass upon the sufficiency of the proposed second amended complaint, we modify the order to the limited extent of making the dismissal without prejudice to afford plaintiff the opportunity, if it be so advised, to replead its fraud claims. In doing so, we take no position on whether plaintiff will be able to sufficiently plead such claims.
Accordingly, the judgment of the Supreme Court, New York County (Jennifer G. Schecter, J.), entered January 19, 2023, dismissing the amended complaint with prejudice, should be modified, on the law, to the extent of striking the direction that the dismissal be "with prejudice" and substituting therefor a direction that the dismissal be "without prejudice," and otherwise affirmed, without costs. The appeals from order and supplemental order, same court and Justice, entered on or about April 1, 2022 and December 21, 2022, should be dismissed, without costs, as subsumed in the appeal from the judgment.
Judgment, Supreme Court, New York County (Jennifer G. Schecter, J.), entered January 19, 2023, modified, on the law, to the extent of striking the direction that the dismissal be "with prejudice" and substituting therefor a direction that the dismissal be "without prejudice," and otherwise affirmed, without costs. Appeals from order and supplemental order, same court and Justice, entered on or about April 1, 2022 and December 21, 2022, dismissed, without costs, as subsumed in the appeal from the judgment.
Opinion by Higgitt, J. All concur.
Moulton, J.P., Kapnick, Scarpulla, Higgitt, O'Neill Levy, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: July 11, 2024

Footnotes

Footnote 1: Plaintiff commenced separate actions against entities that served as the project's lenders, seeking damages for aiding and abetting and conspiracy to commit tortious interference with contract, and conversion (see Iberdrola Energy Projects v MUFG Union Bank, N.A., 218 AD3d 409 [1st Dept 2023]). Plaintiff maintained that the project's lenders facilitated Footprint's wrongful draw on the letter of credit and converted the proceeds. Those actions are pending in Supreme Court. 

Footnote 2: There is no dispute between the parties that defendants are incorporators, shareholders, officers, directors, or affiliates covered by the nonrecourse provision.

Footnote 3: We disagree with plaintiff that, under New York law, a nonrecourse provision can effectively bar only contractual claims. The nonrecourse provision is a contractual limitation on liability which, like other exculpatory clauses, is generally enforceable provided it does not violate a statute or run afoul of public policy (see Matter of Part 60 Put-Back Litig., 36 NY3d at 352; see also Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 384-385 [1983]). 

Footnote 4: Plaintiff's position that defendants do not have the ability to raise the non-recourse provision as a defense to an action against them would result in an absurd reading of that provision and one that is contrary to the reasonable expectations of the contracting parties (see NCCMI, Inc. v Bersin Props., LLC, 226 AD3d 88, 96 [1st Dept 2024]; Matter of Lipper Holdings v Trident Holdings, LLC, 1 AD3d 170, 171 [1st Dept 2003]). After all, defendants are plainly afforded freedom from certain liabilities as a result of the non-recourse provision and they therefore would naturally be expected to raise it as a shield to a suit.

Footnote 5: Plaintiff did not formally cross-move for leave to replead or amend its amended complaint.